# CHARLESTON.

J. W. ELLISON, SON & COMPANY *v.* FLAT TOP GROCERY COMPANY.

Submitted March 15, 1910.     Decided May 9, 1911.

1.   SALES—*Defect in Quality—Right to Rescind.*
     In case of a contract for the sale of two hundred car loads of hay of given quality to be delivered and paid for in monthly installments of seventeen car loads running through a year, the purchaser generally has no right, after the contract has been partly executed, to rescind for defect of quality of some of the hay, but must recoup from the purchase money or sue for damages for such breach.  (p. 382).

2.   SAME—*Contract—Breach—Right to Rescind.*
     Where a purchaser of chattels has right to rescind the contract, for breach of it, the breach must be in a material matter. (p. 386).

Error to Circuit Court, Mercer County.

Action by J. W. Ellison, Son, & Co. against the Flat Top Grocery Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Ritz & Ritz,* for plaintiff in error.

*Sanders & Crockett,* for defendant in error.

BRANNON, JUDGE:

J. W. Ellison, Son & Company and the Flat Top Grocery Company, both corporations, made a written contract by which the Ellison Company sold to the Flat Top Company 200 car

loads of hay, 180 of which were to be No. 1 timothy, and 20 No. 1 mixed, the hay to be good.   The contract contained the clause: "The party of the first part agrees to take the full amount of hay within twelve (12) months, commencing October 1st, 1907, said shipment to be made at the rate of seventeen cars per month, which shipment is to be made on regular terms, payable ten days from date of shipment."   The hay was to be shipped as ordered by the purchaser. The Ellison Company began shipment of hay 10th September, 1907, and continued these shipments until late in June, 1908, when the Flat Top Company refused to receive any further shipments on the ground that the contract had been broken by the plaintiff by reason of the fact that some of the hay was of inferior quality. Under this contract 123 car loads of hay had been then shipped, there remaining to be shipped 77 car loads when the Flat Top Company rescinded the contract.   Of the hay shipped some was inferior.   Up to the 1st of February, 1908, there were shipped 55 cars, and from that date to the cancellation of the contract by the Flat Top Company 68 cars.   The Flat Top Company paid for the 123 cars of hay.   From time to time during the delivery of such cars, nine cars contained some bad hay.   Complaint was made by the Flat Top Company of this bad hay, and the parties met and the Flat Tom Company was allowed a rebate, and that matter was adjusted to the satisfaction of both parties, and the delivery of hay was continued.   Eight of the cars containing bad hay were shipped before February 1st, 1908, and the other one in March.   In June, 1908, two cars contained some bad hay.   One of these cars, however, need not be considered, as it was accepted by the purchaser from the Flat Top Company.   It seems not in question.   As to the other car the Ellison Company took it back on complaint being made.   And on complaint about these two cars the Ellison Company offered to take them both back and replace them with good hay, but the Flat Top Company refused the proposition and cancelled the contract, and then the Ellison Company brought the suit we have in hand against the Flat Top Company to recover damages for the breach of the contract, and recovered a verdict against the Flat Top Company for $4,463.40, and the court refused a new trial and rendered judgment therefor.

A question has been much debated between counsel as to whether this contract is one deemed an entire or a severable contract, in the language of the courts and law books. Is it such a contract, an entire contract, as would authorize the purchaser of the hay, at any point during the process of delivery, to cancel the contract for the delivery of some bad hay, without liability to damages for breach? Or is it a severable contract denying such power of cancellation and compelling the purchaser to execute it and look to the seller for compensation in damages for bad hay delivered? I remark that each contract must stand upon its nature and circumstances. Upon this question there is a wilderness of authority through many, many years, and conflicting. Here is a contract not to deliver a single specific thing at one time. Here is a contract of present sale of chattels to be delivered in future by installments covering a considerable time, not to be executed by one single delivery. We have to take the contract that is in our hands. Can the Flat Top Company receive 123 car loads of hay, and then cancel the contract, leave the undelivered hay on the hands of the Ellison Company, and be immune from damages? "A contract for property to be delivered in installments, where each installment is to be paid for separately, is not entire. The vendor will be entitled to recover for any delivered installment, irrespective of default in the delivery of others. In contracts for the future delivery of goods, to be subsequently or concurrently paid for, the delivery being a condition on the performance of which the right to payment depends, if the contract is entire there must be a delivery of the whole to fulfill the condition. But where delivery is to be made in parcels or installments, severable not only in bulk but prices and times of delivery, the delivery of each parcel is a condition only to payment *pro tanto*. Nor will a default in respect to one severable part entitle the other party to rescind, unless there is then a renunciation of the entire contract, persisted in afterwards." Sutherland on Damages, Vol. 3, pp. 1851, 1852. "A contract to deliver 50,000 tons of coal in a year, at the rate of 6,000 tons a month, at the buyer's option, upon monthly notice of the quantity required for the next month, is severable, and where the contract has been partly performed, and the portion delivered has been paid for

and consumed, but a portion of the coal so delivered and con-
sumed was of inferior quality to that demanded by the con-
tract, no right to rescind the contract is raised, but in an
action by the vendor for a breach of the contract the defendant
may set off his damages by reason of such substitution."
*Scott* v. *Kittanning Coal Co.,* 89 Pa. St. 231, 33 Am. Rep.
753. "Where A contracts to cut and deliver at B's mill a million
feet of merchantable logs within the year, at an agreed sum
per thousand feet, to be scaled and received as each 100,000
ft. are placed in a certain creek, the contract is divisible and
not entire." *Tenny* v. *Mulvaney,* 8 Ore. 129. We find in Ben-
jamin on Sales 579, the following: "In *Simpson* v. *Crippen,*
the defendant had agreed to supply the plaintiff with 6,000
to 8,000 tons of coal, to be delivered in the plaintiff's wagons
at the defendant's colliery 'in equal monthly quantities dur-
ing the period of twelve months from the first of July next.'
During the first month, July, the plaintiff sent wagons for
158 tons only, and on the 1st of August the defendants wrote
that the contract was cancelled on account of the plaintiff's
failure to send for the full monthly quantity in the preceding
month. The plaintiff refused to allow the contract to be
concelled, and the action was brought on the defendants' re-
fusal to go with it. *Held,* that although the plaintiff had com-
mitted a breach of contract by failing to send wagons in suffi-
cient number the first month, the breach was a good ground
for compensation, but did not justify the defendants in rescind-
ing the contract, under the rule established by *Pordage* v. *Cole.*
Two of the judges (Blackwood and Lush, J. J.) declared that
they could not understand *Hoare* v. *Rennie,* and declined to
follow it." We find in 9 Cyc. 648, the following: "Where
the instalments are numerous, extending over a considerable
period, a default either of delivery or payment would not ap-
pear to discharge the contract, although it must necessarily
give rise for an action for damages." In *Blackburn* v. *Riley,*
47 N. J. L. 290, 54 Am. Rep. 159, it is held: "On a contract
for sales of goods by successive deliveries and payments, a
default in respect to one or more will not discharge the
other party unless it is evident that the defaulting party in-
tends no longer to fulfill." In *Geril* v. *Poidebard Co.,* 57
N. J. L. 432, 51 Am. Rep. 611, it is held: "Upon a sale of

goods delivered in installments there is no right of rescission by the purchaser for a failure to deliver one of the installments, unless the seller, by his conduct, indicates his intention to abandon the contract, or a desire no longer to be bound by its terms.    Hence, under a contract to sell thirty bales of silk, to be delivered in specific installments, at times designated, the failure or inability of the seller to deliver the first installment at the time agreed upon does not release the purchaser from the whole contract.    He remains under obligation to receive the other installments when tendered to him, if the usefulness to him of any installment did not depend on prompt delivery of the prior installments, and full indemnity for the failure to deliver the first installment could be secured by action based thereon."    "Where there was a contract for the purchase of a cargo of flour, and a portion of it was delivered, paid for, and used by the purchaser, he cannot repudiate the contract, upon the ground that the brand upon the flour was not that for which he contracted."    *Lyon* v. *Bertram,* 20 How. 149.    The court also said:    "When an article is warranted and the warranty is not complied with, a purchaser who has received and paid for and used a portion of the article, and derived a benefit from it, cannot then rescind the contract. He may receive it and bring a cross action for the breach of warranty."    Much more authority in this line could be given. See 59 Amer. St. R. 279, for full authority.    Of course, authorities contra could also be given.    We think that these authorities are apt in the case we have in hand, defect in quality.    It might be different for failure of the purchaser in payment.    It might be different on failure to deliver on time when time is material under the circumstances.    But we have a case where after a large part of the contract had been executed the purchaser rescinds for defect in quality to a limited extent of hay.    I would say that the contract in such a case is severable, and that the purchaser cannot abruptly cancel the contract, but must look to damages.    Great stress is placed by the defense on the case of *Norrington* v. *Wright,* 115 U. S. 188. There was a failure to deliver iron rails at a certain stipulated time and failure in quantity of shipment, and the court held that the purchaser could rescind.    They were first deliveries. That case is different.    The seller failed to ship the first ship-

ments, I say the first shipments, a material matter, at the time
stipulated, and as soon as the purchaser learned that the quan-
tity to be shipped had not been shipped he cancelled the con-
tract. Time was the essence there. The opinion says so and
Justice Gray said: "Their previous acceptance of the single
cargo of 400 tons shipped in February was no waiver of this
right, because it took place without notice, or means of knowl-
edge, that the stipulated quantity had not been shipped in Feb-
ruary." *Filley* v. *Poke*, 115 U. S. 213, differs from this case.
There was a failure to ship the pig iron from Glasgow to New
Orleans. And the court held that shipment from Glasgow was
a material part of the contract and that the buyer could refuse
to accept iron shipped from Leith arriving at New Orleans
earlier than it would have arrived if shipped from Glasgow.
Here was premature delivery. Many of the authorities, as will
be seen in Williston on Sales, § 467, say that the purchaser may
rescind if the circumstances show an intent or inability on the
part of the seller not to complete his contract. He says the
late English authorities so hold; that is, they deny the right
of rescission, and require the party to look to damages, unless
such intention to abandon the contract by the party who should
perform it appears. So says 7 Am. & Eng. Ency. L. 150. But in
this case the Ellison Company was ready, willing and able to
complete its contract and begged, but was refused, leave to do
so. Thus amid conflicting authority, on this case, as it is, for
each must stand on its own facts, I would hold that there would
be no right of rescission, but the purchaser must allow the con-
tract to be completed and sue for damages for defect in quality
of the hay delivered.

There is another view against the defendant. It had received
123 car loads. Its repudiation of the contract would leave 77
car loads on the hands of the plaintiff, which must be supposed
to have made purchases of farmers and bound itself in order
to be able to comply with its contract with the Flat Top Com-
pany. Could that right be exercised when the Flat Top Com-
pany had received more than half the hay and could not return
it, could not place the Ellison Company in *statu quo?* The
fact that it could not do so is an argument against the right of
rescission. When one party can make the other whole it is often
different. "The contract must be rescinded in toto; cannot be

rescinded in part and affirmed in part." Clark on Contracts
350. A contract must be wholly rescinded or not at all, is said
in *Buskirk* v. *Peck,* 57 W. Va. 372. *Manss-Bruning Co.* v.
*Prince,* 51 W. Va. 510, to same effect. As is said in 30 L. R. A.
at page 72, "And the court held that in case of a failure to com-
ply with the contract in reference to the first shipment the pur-
chaser might refuse to accept and rescind the contract, but this
might not be so if the breach was in a subsequent shipment,
since then the seller could not be put in *statu quo.*" In *Kauf-
man* v. *Beader,* 108 Fed. Rep. 171, a circuit court of appeals
held, "Where one party to a contract has received and retained
the benefits of a substantial partial performance thereof by the
other party, he cannot rescind it, but the contract must stand,
he must perform his part of it, and his remedy for the breach
of complete performance by the other party is limited to com-
pensation therefor in damages. A breach of an independent
covenant, a covenant which does not go to the whole considera-
tion of a contract, but which is subordinate and incidental to
its main purpose, does not constitute a breach of the entire con-
tract, or warrant its rescission by the injured party. The lat-
ter is still bound to perform his part of the contract, and his
remedy for the breach is compensation in damages."

But be the above holding as it may, the decision of this case
is not alone governed by it. And why? Because there was no
*substantial breach* of the contract by the Ellison Company.
There was only one car having bad hay in it that was made the
basis of the repudiation of the contract by the Flat Top Com-
pany. The nine cars that contained bad hay had been arranged.
The parties were satisfied by mutual agreement for abatement
as to them. Thereafter there was only one car containing some
bad hay. It would seem unjust that this small item should al-
low the purchaser to annul the contract and leave 77 car loads
of hay on the hands of the seller, and make it suffer a loss by
having to hunt another purchaser, and sell it at a loss, as the
evidence shows that when the defendant cancelled the contract
hay was falling and materially fell in price. This repudiation
of the contract did not take place at the opening of its execu-
tion by the Ellison Company. It might well happen that in so
large a quantity of hay having to be gathered here and there
from farmers, there would be some bad hay. The Flat Top

Company so regarded it because it allowed the Ellison Company to atone for nine car loads of bad hay by a rebate therefor. It did not then regard this so material a matter. Why did it not then treat defect in the nine car loads of hay as ground for cancellation? It did not do so, but allowed the Ellison Company to go on under the contract, and months later the Flat Top Company repudiated the contract for some bad hay in *one* car load. Now, what does the law say even in those cases of contracts where the right of rescission exists for breach? I quote from Williston on Sales, § 467: "Accordingly the general rule governing bilateral contracts must be applied. If either buyer or seller, therefore, has committed a *material* breach of contract, or has by repudiation manifested an intention to commit such a breach, the other party should be excused from the obligation to perform further. If, however, the injured party knowingly accepts defective performance of the contract, or accepts further performance after he is aware that a breach of contract has been committed, such conduct will operate as a waiver of his right to refuse to go on with the contract, though not necessarily of his right to recover damages for the breach committed by the other party. These principles are reasonably well settled in regard to contracts generally, and should furnish a sufficient guide in regard to installment contracts; but, unfortunately the English courts, though at first seeming to accept these views, in later decisions seem to deny the injured party the right to refuse to continue performance irrespective of the materiality of the breach, unless the breach or some act or conduct of the wrongdoer 'amounts to an intimation of an intention to abandon and altogether to refuse performance of the contract.'" I quote from 24 Am. & Eng. Ency. L. 644: "Generally the failure of performance, in order to constitute a ground for rescission, must be total; such as to defeat the object of the contract or render it unattainable. The right to rescission does not exist where there has been a substantial though not literally a complete performance." Under this authority I ask did this failure as to one car deprive the Flat Top Company of the benefit of the contract? Was it not sure that it could and would get for the balance good hay? It had gotten good hay up to the date of its repudiation of the contract. The contract had been so far made good to it, and it had

every reason to be sure that the balance of the contract would be properly executed. It would lose nothing, suffer no detriment. But aside from that there was no material or substantial breach. The Ellison Company had furnished 123 cars, and could and would furnish the balance, and it would be most unreasonable to say that this small failure as to one car should break the contract. Williston says, in section 467, that "As a matter of theory the excuse of an innocent promisor in a contract should depend on whether he will receive, if he goes on with the contract, substantially what he bargained for. If he will not receive substantially what he bargained for he ought not to be required to perform the contract." His text makes the right to rescind, even if that right exists, dependent on the materiality of the omission.

The plaintiff's two instructions complained of were consistent with the legal principles above stated, and we see no error in them. As they are long, and as the legal principles are above stated, and the case will not go back for trial, we need not insert them.

The defendant's instructions Nos. 1, 2, 3, 4 and 9 are based on the right of rescission in this case and are not good according to the principles above stated. We need not insert them at length as the legal principles have been stated. They are of great length.

The defendant's instruction No. 5 would have told the jury that if the hay already shipped did not comply with the terms of the written contract and the plaintiff had notice thereof, the defendant had right to presume that the 77 car loads thereafter to be shipped were of the same kind as those previously shipped, and it had a right to cancel the contract. In the first place, the bulk of the hay that had been shipped was good, and as to that that was bad it had been adjusted, and thus far the instruction did not suit the case; but further, the fact that there had been some bad hay shipped would not justify the defendant in assuming that more would be shipped, especially as the parties had agreed as to the bad hay that had been shipped, and the subsequent shipments and the eagerness of the Ellison Company to comply with the contract as to quality would justify the inference that bad hay would not be shipped; anyhow, it would not justify the mere assumption that the contract would

in future be violated. The defendant could not anticipate this.

The defendant's instruction No. 6 says that if the jury believes from the evidence that part of the hay shipped was not of the quality required, and that the hay which the Ellison Company had for shipping upon the remainder of the contract was of inferior quality, then the defendant had right to cancel the contract. Now, there was a great deal of evidence to show to the contrary. There was no evidence to justify the theory that the hay thereafter to be shipped was bad. The instruction was not apt to the evidence, and only tended to mislead from the justice of the case. The justice of the case did not demand it. Besides that an instruction of the plaintiff, No. 2, told the jury that the hay thereafter to be furnished must be such as the contract required.

The defence claims that an instruction for the plaintiff would allow as a measure of damages a recovery on 77 car loads of hay the difference between the contract price and the market price at the dates of delivery, and that for the month of September, 1907, only four cars were shipped when seventeen should have been, and in October, when seventeen cars should have been shipped, only seven were shipped, making 23 cars shortage in those months, and that these failures were attributable to inability to get cars except in two instances. Now, in the first place, for the month of September only one car load was demanded by the contract and four were delivered. In the next place, the contract excuses for inability to get cars. In the next place, it is clearly proven that the defendant failed to give orders for shipment in several instances, though requested to do so. Counsel for defendant say that as the defendant did not give shipping instructions for as many as seventeen cars in several months and 28 cars were behind at the time of the cancellation, the plaintiff by continuing to ship after such failure of shipping orders waived its right to require the defendant to take the cars which should have been but were not ordered during each month, and that the instructions for the plaintiff to the extent that they make no allowance for these cars are erroneous to the extent that the failure to ship these cars was due to the omission to give orders for them. We do not see that there is any strength in this. The reason why these 28 cars were not shipped in those months was the failure of the defendant to

give orders for them. This is not disputed. Is this a claim for damages by recoupment or failure to ship in those months? If so no notice was given of it. But at any rate orders were not given for shipment of those 28 cars at the time stipulated. No fault is found with the principle laid down by the court as to the measure of damages, in a general sense.

The defendant complains that witness Ellison was asked if the plaintiff had sold the 77 car loads of hay which it had on hand for delivery to the defendant as No. 1 timothy and No. 1 mixed hay, and was allowed to answer that it had been sold as No. 1 hay. Now, the plaintiff had right to show that those 77 cars were good hay; and we fail to see that evidence of their sale as No. 1 in the market would be inadmissible. Counsel for defendant say that such sale was *res inter alios acta,* that is, a transaction to which the defendant was not a party and not bound; but we think that such sale in the open market was a circumstance tending to show that the hay was good, as the plaintiff had right to show, though not called upon to show it, perhaps.

The same may be said as to the evidence of witness Hoge.

An assignment of error is as to witness Larrick in allowing him to say that he attempted to purchase some of the hay delivered to the Flat Top Company as No. 1 hay. This only went to prove, was only a mode of proving, that this hay was of good quality as called for by the contract. Surely there can be no solid objection to this.

The main point in this case is as to the right of rescission under the contract. These other matters touching the measure of damages and the evidence of Ellison, Hoge and Larrick are inconsequential, cutting no important figure in this case, surely not ground for reversing a fair trial on the merits of the case doing justice. People contracting ought to live up to their contracts. It would surely be contrary to justice and law to allow the Flat Top Company, after this contract had been largely executed, with honest intent on the part of the Ellison Company to honestly execute it, to break it off for some bad hay in one car out of two hundred, especially when the Ellison Company asked pardon and took that car back and offered to replace it with another car of good hay. Counsel for the defendant do not base the right of rescission on anything but the presence

of some bad hay in that one single car. The case leads us to say that there was no substantial breach of the contract on the part of the Ellison Company, and that the fact that hay was falling greatly in price was the inducement to the Flat Top Company to repudiate the contract, and not the breach of it by the Ellison Company.

We affirm the judgment of the circuit court.

*Affirmed.*