589 P.2d 73 (1978)
Eileen L. HUMMEL, d/b/a Impala Motors, Plaintiff-Appellee,
v.
SKYLINE DODGE, INC., a Delaware Corporation, Defendant-Appellant.
No. 77-571.
Colorado Court of Appeals, Div. II.
December 14, 1978.
*74 Kenneth R. Hope, Stanley W. Prisner, Lakewood, for plaintiff-appellee.
Roath & Brega, P. C., Jack W. Berryhill, Denver, for defendant-appellant.
SILVERSTEIN, Chief Judge.
Defendant, Skyline Dodge, Inc., appeals from a judgment in favor of plaintiff, Eileen L. Hummel, doing business as Impala Motors, on plaintiff's claim for the purchase price of an automobile sold by plaintiff to defendant, and from a judgment which dismissed defendant's counterclaims. We affirm.
*75 Plaintiff is a used car dealer and defendant is a dealer in new and used cars. The car involved here, a Dodge Dart, was brought into plaintiff's lot by a customer who wanted to make a trade. While the customer was testing the car he wanted to buy, plaintiff, after having called defendant, drove the Dart to defendant's lot. Plaintiff told defendant's employees that the car had been in an accident and that the front clip had been replaced.
Defendant's sales manager and another employee examined the car by checking the tires and the trunk, and by lifting the hood and looking at the engine. Also the employee drove the car for about four or five blocks and noticed the air conditioning unit did not work and that the wheels were slightly out of alignment.
After some negotiation defendant agreed to buy the car for $2,150. Plaintiff's agent then drove the car back to his lot, consummated a trade with his customer, and notified defendant that it had bought the car. The following day plaintiff delivered the car and title papers to defendant and received a check for the purchase price.
Two days later a customer of defendant test drove the car and heard a knocking sound while driving on a rough road, but nevertheless offered to buy the car for $3,295. However, in preparing the car for delivery, defendant discovered that the frame was bent and that an engine mount was broken, and that there were serious defects in the steering. Defendant then refused to sell the car to the customer, who bought another car from defendant.
Thereafter, plaintiff refused defendant's request to take the car back, and defendant stopped payment of its check, whereupon plaintiff brought this action. Defendant counterclaimed for lost profits and incidental damages.
We must first resolve one factual dispute which affects most of defendant's claimed errors. Defendant urges that the defects in the car were not readily discoverable by it because, while it possessed the equipment necessary to conduct a more thorough inspection, the equipment was not readily available for this use when the car was first brought in by plaintiff. The court, as trier of fact, found the defects in the car were readily discoverable if defendant had made use of the experts and equipment available on its premises. This finding is supported by evidence in the record, so we are bound by the determination on appeal. Burnford v. Blanning, 189 Colo. 292, 540 P.2d 337 (1975).
Defendant challenges the trial court's ruling that the sale was on an "as is" basis without express or implied warranties. However, there is evidence in the record which supports the trial court's finding that there is a "usage of trade" that wholesale sales, such as the one here involved, are made on an "as is" basis. Also, irrespective of the existence of "usage of the trade," the evidence supports the finding that this transaction was an "as is" sale. Under § 4-2-316(3)(a), (3)(b), and (3)(c), C.R.S. 1973, implied warranties are excluded from these transactions. See Official Comment 8 to that statute.
In support of its contention that the sale was not "as is," defendant asserts that an express warranty existed under § 4-2-313, C.R.S. 1973, because a safety inspection sticker which was issued two months prior to the date on which defendant bought the car, was on the car's windshield. This claim is without merit. The sticker warrants only that on the date of inspection the car complied with the safety criteria designated by the Department of Revenue. See § 42-4-302(4)(a), C.R.S.1973. And, since an accident or other circumstance might alter the condition of the vehicle, the sticker could not serve to guarantee that the car would continue to meet those criteria after the date the sticker was issued. See Tardos v. Bozant, 1 La.Ann. 199 (1846), (certificate of inspection warrants that the article inspected was sound at the time inspected, and that it would remain so for a reasonable time, "if the article was handled with proper care."); see also Buszta v. Souther, 102 R.I. 609, 232 A.2d 396 (1967).
*76 Defendant's reliance on the Regulations of the Colorado Dealer Licensing Board cannot be considered on appeal since the regulations were not in evidence before the trial court, and the issue was not raised in the motion for new trial. C.R.C.P. 59(f); Furer v. Allied Steel Co., 174 Colo. 171, 483 P.2d 212 (1971).
Defendant next challenges the trial court's decision that it accepted the car within the meaning of § 4-2-606, C.R.S. 1973, which provides that acceptance occurs when the buyer "after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity."
Plaintiff brought the car to defendant for inspection in the hope that a sales agreement could be reached. Two of defendant's employees examined the car and test drove it. Thereafter, defendant agreed to buy the car without reserving any further right to inspect. The following day, plaintiff brought the car to defendant and defendant paid for it and accepted title to it without any further inspection.
Since defendant is a professional, we agree with the trial court that defendant's conduct amounted to a valid, unconditional acceptance of the car. "Certainly when a professional purchaser inspects goods bought for use in his business and then states that he will take the goods . . . we have an acceptance." J. White & R. Summers, Uniform Commercial Code § 8-2 at 250 (1972). Defendant's oral acceptance was reinforced by its payment for, and acceptance of, possession and title to the car.
Section 4-2-513, C.R.S. 1973, grants a buyer a right to inspect goods upon tender or delivery. Defendant exercised this right by assuring itself that the car delivered by plaintiff was the same car defendant had examined and agreed to buy. This is the full protection offered by the statute when the goods have been examined before the contract is executed. See Gallant Fabrics v. Tanenbaum Textile Co., 3 A.D.2d 1000, 163 N.Y.S.2d 423 (1957).
Defendant finally argues that even if it did accept the sales offer, it had the right to revoke its acceptance upon discovering the defects in the car. A buyer may revoke acceptance if the acceptance was made "without discovery of such [defects] if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." Section 4-2-608(b), C.R.S. 1973. But, we agree with the rule in Lyns, Inc. v. Ordnance Products, Inc., 273 Md. 1, 327 A.2d 502 (1974), that a buyer may not revoke acceptance based upon defects which were not known to him at the time of acceptance because of his own failure to make a reasonable investigation which was readily available. Here defendant, after having been advised that the car had been in an accident, had an unlimited opportunity to inspect the car prior to agreeing to purchase it, and defendant's expert employees made an inspection without discovering the readily apparent defects. Therefore, defendant had no right to revoke acceptance based upon these defects. Sessa v. Riegle, 427 F.Supp. 760 (E.D.Pa.1977).
We find no merit in defendant's other contentions.
Judgment affirmed.
ENOCH and VAN CISE, JJ., concur.