378 S.E.2d 649

**Donald KESNER**

v.

**James LANCASTER.**

No. 18246.

Supreme Court of Appeals of West Virginia.

Feb. 17, 1989.

---

David H. Webb, Staggers & Webb, Keyser, for James Lancaster.

Nelson Michael, Keyser, for Kesner.

MILLER, Justice:

This is an appeal from an order of the Circuit Court of Mineral County which entered a judgment in favor of Donald Kesner (buyer), the plaintiff in a civil action to recover the purchase price of earth-moving equipment he had purchased from James Lancaster (seller). The buyer alleged that he had timely revoked his acceptance of the equipment pursuant to W.Va.Code, 46–2–608, of the Uniform Commercial Code (UCC).[1] The seller argues that the jury verdict was erroneous because: (1) W.Va. Code, 46–2–608, does not apply to sales transactions in which neither party is a "merchant," and (2) the buyer failed to present prima facie evidence that the defect substantially impaired the machine or was difficult to discover prior to accept-

ance. We find that the trial court committed no error, and we affirm the jury verdict.

I.

On or about September 13, 1985, the seller advertised a 1974 John Deere tractor-loader for sale in a local newspaper. The buyer responded to the advertisement and arranged to see the machine the following day at the seller's home near Keyser, Mineral County.

The buyer inspected the two-track loader and noted that it was freshly painted and that the undercarriage was in good condition. The seller started the motor, and the buyer observed that the engine ran well. When the buyer told the seller that he needed to use the loader immediately to dig a ditch for a septic system and inquired about its condition, the seller assured him that the equipment was in fine shape. The buyer asked to operate the machine, but was discouraged from doing so by the seller because attachments would have to be changed.

On Monday, September 16, 1985, the buyer arranged to consummate the sale at the seller's residence. The parties again discussed the condition of the loader, and, according to the buyer, the seller again assured him that there was nothing wrong with the machine. The buyer paid for the loader with a personal check of $9,000, drove the machine onto a low-boy trailer, and hauled it away. There was no written contract.

The next day the buyer transported the loader to Reese Mill Road, where he was going to install the septic system. At the work site, the buyer drove the loader from the trailer and began removing the topsoil. Within minutes, the machine stopped and would not move. The buyer testified he could tell from the way the machine was operating that one of the steering clutches was defective.

The buyer decided to fix the steering clutch himself. He removed the seats to

---

**1.** As stated in W.Va.Code, 46–1–101, "[t]his chapter shall be known as and may be cited as Uniform Commercial Code." Our Chapter 46 parallels the Uniform Commercial Code.

obtain access to the clutch and noticed that the transmission had pulled away from its housing. When the buyer removed the floorboards to get a closer look, he noticed that the bolts securing the transmission in its housing were rusted and stripped. Upon further investigation, the buyer discovered that the bolts at the bottom of the housing were also rusted and stripped. Further investigation revealed that the transmission and frame rails had cracked and been welded together and that several bolts to the A-frame were missing.

A mechanic for the buyer estimated that repairs to the transmission mounting bolts, the frame rails, and the steering clutch would take a minimum of thirty-six hours at $20.00 per hour, or $720. The mechanic also stated, however, that he would have to disassemble the transmission to see if there was any internal damage and could not estimate the cost of any additional repairs.

Convinced that major repairs were necessary, the buyer called the seller and told him that he wanted to return the loader and get his money back. The seller refused. Although the buyer called the seller numerous times and had his attorney write the seller a letter, the seller did not respond. Finally, the buyer filed suit in the Circuit Court of Mineral County to recover the purchase price. The jury found that the buyer had justifiably revoked his acceptance of the loader and was, therefore, entitled to the return of his $9,000.

## I.

The right of the buyer to rescind a contract for the purchase of goods is long established. In Syllabus Point 2 of *J.W. Ellison, Son & Co. v. Flat Top Grocery Co.*, 69 W.Va. 380, 71 S.E. 391 (1911), the Court stated: "Where a purchaser of chattels has right to rescind the contract, for breach of it, the breach must be in a material matter." In addition to a material breach, our case law required a buyer who sought rescission or revocation [2] of a sales contract to provide "[c]lear and unambiguous notice" of that fact to the seller "promptly or within a reasonable time after the purchase or sale." Syllabus Points 3 and 4, in part, *Shreve v. Casto Trailer Sales, Inc.*, 150 W.Va. 669, 149 S.E.2d 238 (1966).[3]

These principles are now drawn together in W.Va.Code, 46-2-608, permitting the buyer to revoke acceptance of goods for nonconformity to the contract of sale.[4] In general, this section requires several

**2.** The term "rescission" is used in our earlier cases. According to note 1 of the Official Comment to W.Va.Code, 46-2-608, the phrase "revocation of acceptance" is used by the UCC to avoid the confusion surrounding whether "rescission" was an alternative remedy to a suit for damages. In *Shreve v. Casto Trailer Sales, Inc.*, 150 W.Va. 669, 149 S.E.2d 238 (1966), the Court, by way of dictum, recognized that under W.Va. Code, 46-2-608, both revocation and a suit for breach of contract are available.

**3.** In *Reece v. Yeager Ford Sales, Inc.*, 155 W.Va. 453, 184 S.E.2d 722 (1971) (*Reece I*), we discussed a buyer's right to rescind a contract for the purchase of a new car which he claimed was defective. He had the car for slightly over two months. The court discussed W.Va.Code, 46-2-508(1), which covers the seller's right to cure defects where the buyer has initially rejected the seller's "tender or delivery ... because nonconforming and the time for performance was not yet expired...." This section is generally not applicable where the buyer accepts the goods and then wishes to revoke because of after-discovered defects. *See* 1 J. White & R. Summers, *Uniform Commercial Code* 425 (3d ed. 1988). Both *Reece I* and its companion case, *Reece v. Yeager Ford Sales, Inc.*, 155 W.Va. 461,

184 S.E.2d 727 (1971) (*Reece II*), demonstrate why the revocation provisions of the UCC present difficulties to the purchasers of motor vehicles. If the buyer uses the car after he discovers the defect, as he may if it is necessary transportation, he may be deemed to have waived the defects. Moreover, *Reece II* held that the UCC remedies were not available against the manufacturer, as it was not a "seller" within the meaning of the Code. *See* W.Va. Code, 46-2-103(1).

**4.** W.Va.Code, 46-2-608, provides:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

"(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

"(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground

conditions to be met before the buyer may revoke his acceptance: (1) the nonconformity must have substantially impaired the value of the goods to the buyer; (2) the goods must have been accepted on the reasonable assumption that the nonconformity would be cured, and it was not,[5] or accepted without discovery of the nonconformity, either because of the difficulty of discovery or because of the seller's assurances; (3) the revocation must have occurred within a reasonable time after discovery of the defect and before any substantial change in the condition of the goods; and (4) the revocation is not effective until the buyer has notified the seller. A buyer making a revocation after acceptance on these terms has the same rights and duties under the UCC as one who had rejected the goods originally.[6]

In this case, the parties raise the issues of whether the loader was substantially impaired and whether the defects should have been reasonably discovered. An additional and more fundamental issue is whether the UCC applies to an isolated sale. We address this issue first.

## II.

■ The UCC applies to the sale of any goods.[7] It makes a distinction between the general term "seller" and the more specific term "merchant." Under W.Va.Code, 46–2–103, a seller is "a person who sells or contracts to sell goods." A "merchant" is defined as one "having knowledge or skill peculiar to the practices or goods involved in the transaction[.]" W.Va.Code, 46–2–104(1).[8] The official commentary to the latter section indicates that casual sellers are covered,[9] and this has led courts to conclude that the sales provisions of the UCC apply to isolated sales of goods by

---

5. This right to cure is not the absolute right to cure given to the seller under W.Va.Code, 46–2–508, when the buyer initially rejects the goods. Instead, W.Va.Code, 46–2–608(1)(a), affords the buyer an opportunity to explain why he accepted nonconforming goods, ordinarily an absolute bar to subsequent revocation under W.Va.Code, 46–2–607(2): "Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a nonconformity cannot be revoked ... unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured[.]" *See* 1 J. White & R. Summers, *supra,* at 419.

6. For the ordinary buyer's duty to preserve goods in his possession, see W.Va.Code, 46–2–602(2)(b); and for the merchant buyer's duty, see W.Va.Code, 46–2–603.

7. The term "goods" is broadly defined in W.Va. Code, 46–2–105(1) and (2):

"(1) 'Goods' mean all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) [§ 46–8–101 et seq.] and things in action. 'Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (section 2–107) [§ 46–2–107].

"(2) Goods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are 'future' goods. A purported present sale of future goods or of any interest therein operates as a contract to sell."

8. W.Va.Code, 46–2–104(1), provides:

"'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of any agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

9. Note 1 of the official commentary to W.Va. Code, 46–2–104, states:

"This Article assumes that transactions between professionals in a given field require special and clear rules which may not apply to a casual or inexperienced seller or buyer. It thus adopts a policy of expressly stating rules applicable 'between merchants' and 'as against a merchant', wherever they are needed instead of making them depend upon the circumstances of each case as in the statutes cited above. This section lays the foundation of this policy by defining those who are to be regarded as professionals or 'merchants' and by stating when a transaction is deemed to be 'between merchants'."

---

for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3) A buyer who so revokes has the same right and duties with regard to the goods involved as if he had rejected them."

persons who are not merchants. *See, e.g. Bevard v. Ajax Mfg. Co.*, 473 F.Supp. 35 (E.D.Mich.1979); *Lawson v. Turner*, 404 So.2d 424 (Fla.App.1981); *Smith v. Stewart*, 233 Kan. 904, 667 P.2d 358 (1983); *Nelson v. International Harvester Corp.*, 394 N.W.2d 578 (Minn.App.1986); *McGregor v. Dimou*, 101 Misc.2d 756, 422 N.Y.S.2d 806 (1979). Thus, the sale in the present case is within the ambit of the UCC.[10]

### III.

Even though this transaction is subject to the revocation provision of the UCC, W.Va.Code, 46–2–608, the seller argues that the buyer did not present a prima facie case. He contends that since the cost of repairs was much less than the purchase price, the value of the loader was not substantially impaired by the defects, a requisite of W.Va.Code, 46–2–608(1).[11]

This Court has not spoken in any detail to the substantial impairment language contained in W.Va.Code, 46–2–608(1).[12] The official commentary to this provision explains that in assessing substantial impairment, "the question is whether the nonconformity is such as will in fact cause a substantial impairment of value to the buyer though the seller had no advance knowl-

edge as to the buyer's particular circumstances." Official Comment, Note 2, W.Va.Code, 46–2–608.

■ Most commentators and courts agree that there are both subjective and objective aspects to the determination of whether a defect "substantially impairs" the value of goods so as to enable a buyer to revoke his acceptance of them. The subjective component of the test takes into consideration the particular buyer's needs and expectations. The objective element focuses on the actual defects, which must not be trivial or insubstantial.[13] This principle is explained in *Asciolla v. Manter Oldsmobile–Pontiac, Inc.*, 117 N.H. 85, 88–89, 370 A.2d 270, 273 (1977):

"This section, therefore, creates a subjective test in the sense that the needs and circumstances of the particular buyer must be examined. This determination is not, however, made by reference to the buyer's personal belief as to the reduced value of the goods in question. The trier of fact must make an objective determination that the value of the goods to the buyer has in fact been substantially impaired."

*See, e.g., Tiger Motor Co., Inc. v. McMurtry*, 284 Ala. 283, 224 So.2d 638 (1969);

---

**10.** It should be noted that under the UCC, higher duties, such as an implied warranty of merchantability and the necessity of dealing in good faith, are imposed on a merchant rather than on the ordinary seller. *See* W.Va.Code, 46–2–103(1)(b); W.Va.Code, 46–2–314. *See also Siemen v. Alden*, 34 Ill.App.3d 961, 341 N.E.2d 713 (1975); *McGregor v. Dimou, supra; Bruce v. Martin–Marietta Corp.*, 418 F.Supp. 837 (W.D.Okla.1975), *aff'd*, 544 F.2d 442 (10th Cir. 1976); 1 J. White & R. Summers, *supra*, at 467–68.

**11.** For the language of W.Va.Code, 46–2–608(1), *see* note 3, *supra*.

**12.** In *Reece I*, 155 W.Va. at 459–60, 184 S.E.2d at 726, the Court mentioned W.Va.Code, 46–2–608, stating only that "the defects or nonconformity must be of such nature that they *substantially impair* the value of the goods before revocation of acceptance is possible." (Emphasis in original).

**13.** One commentator has suggested that the drafters of the UCC intended the test for sub-

stantial impairment to have three major aspects. *See* Note, *Revocation of Acceptance: The Test of Substantial Impairment*, 32 U.Pitt.L.Rev. 439, 447 (1971):

"First, the test must be subjective. The buyer has the burden of proving that the value of the goods was impaired to him personally. The fact that the value to an average man would be impaired by the defect is insufficient to allow revocation of acceptance. Second, the buyer must prove such impairment through the introduction of 'objective evidence.' The buyer can not revoke acceptance simply by showing he believed that the value of the goods was substantially impaired to him. He must show that the value was 'in fact' impaired to him. Third, no advance knowledge, by the seller, 'of the buyer's particular circumstances' is necessary. If the seller sells a defective product, he assumes the risk that the defect will substantially impair the value to the particular buyer, and the seller must suffer the consequences of a revocation of acceptance if the buyer can prove the value was in fact impaired to him." (Footnotes omitted).

*Web Press Services Corp. v. New London Motors, Inc.,* 203 Conn. 342, 525 A.2d 57 (1987); *Jensen v. Seigel Mobile Homes Group,* 105 Idaho 189, 668 P.2d 65 (1983); *Lathrop v. Tyrrell,* 128 Ill.App.3d 1067, 84 Ill.Dec. 283, 471 N.E.2d 1049 (1984); *Champion Ford Sales, Inc. v. Levine,* 49 Md.App. 547, 433 A.2d 1218 (1981); *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349 (Minn.1977); *General Motors Acceptance Corp. v. Jankowitz,* 216 N.J.Super. 313, 523 A.2d 695 (1987); *Jorgensen v. Pressnall,* 274 Or. 285, 545 P.2d 1382 (1976); *Gasque v. Mooers Motor Car Co., Inc.,* 227 Va. 154, 313 S.E.2d 384 (1984); *Hays Merchandise, Inc. v. Dewey,* 78 Wash. 2d 343, 474 P.2d 270 (1970). *See generally* 67A Am.Jur.2d *Sales* § 1203 (1985); 1 J. White & R. Summers, *Uniform Commercial Code* 417–18 (3d ed. 1988).

■ In the present case, there was sufficient evidence for the jury to find that the value of the loader had been substantially impaired within the meaning of the statute. The loader was inoperable and needed major repairs. The mechanic's estimate of $720 did not include the cost of disassembling the transmission nor the repair of any internal damage. From the time he purchased the loader, the buyer has been unable to use it. From an objective standpoint, the machine's value has been substantially impaired. In light of the evidence presented, we find that the jury's determination that the value of the loader was substantially impaired was not clearly erroneous.

## IV.

The seller also argues that the buyer accepted the goods when the nonconformity could reasonably have been discovered prior to acceptance. As we have already noted, to be entitled to revocation under the UCC, the buyer must show that his acceptance of the goods without discovery of the nonconformity was either due to the difficulty of discovering the defect or induced by the assurances of the seller. W.Va.Code, 46–2–608(1)(b).[14] A buyer need only prove one of these factors. *Desilets Granite Co. v. Stone Equalizer Corp.,* 133 Vt. 372, 340 A.2d 65 (1973); 1 J. White & R. Summers, *supra,* at 419–20.

■ Courts have generally concluded that unless a defect is reasonably apparent or the buyer has some special expertise, a buyer who has made a reasonable inspection of goods and failed to find the defect has satisfied the "difficulty of discovery" test. *McCormick v. Ornstein,* 119 Ariz. 352, 580 P.2d 1206 (1978); *Jensen v. Seigel Mobile Homes Group,* 105 Idaho at 190–91, 668 P.2d at 66–67; *Rose v. Epley Motor Sales,* 288 N.C. 53, 215 S.E.2d 573 (1975). Here, both parties testified that the buyer visually inspected the equipment prior to purchasing it. The buyer noted that the machine had been freshly painted, the undercarriage was in good condition, and the engine ran well. It was not until the machine stopped running, and the buyer removed the seats, floorboard, and belly pan that the defects were discovered. We believe there was sufficient evidence to carry the question to the jury.[15]

---

**14.** Actually, under W.Va.Code, 46–2–608(1)(a), the buyer may obviate the necessity of coming within the discovery requirement by showing that he accepted the goods "on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured." This condition is not an issue in the present case.

**15.** The buyer might also have had the right to rely on the seller's assurance, made prior to the acceptance, that the machine was in "fine shape." Under W.Va.Code, 46–2–608(1)(b), a seller's assurances have the effect of absolving the buyer from a duty to make a discovery of the nonconformity. *See* 1 J. White & R. Summers, *supra,* at 420. In view of our holding on the difficulty of discovery issue, we need not address this point.

Independent of assurances which induce the buyer to accept goods without discovering the defect, it is not uncommon for the seller, after the buyer's discovery of the nonconformity, to make assurances that the defect will be cured, leading the buyer into delaying the decision to revoke. Courts are virtually unanimous in holding that such delays will not prevent the buyer from revoking his acceptance under the UCC. *E.g., Sumner v. Fel–Air Inc.,* 680 P.2d 1109 (Alaska 1984); *Preston Motor Co., Inc. v. Palomares,* 133 Ariz. 245, 650 P.2d 1227 (1982); *Welch v. Fitzgerald–Hicks Dodge, Inc.,* 121 N.H. 358, 430 A.2d 144 (1981); *Cardwell v. International Housing, Inc.,* 282 Pa.Super. 498, 423 A.2d

It is also clear that this is not a case where the buyer purchased the goods after disclosure by the seller of the defects. Where this occurs, or where the defects were sufficiently obvious that the buyer is charged with knowledge of them, he is foreclosed from revoking his prior acceptance of the goods. *E.g., Hummel v. Skyline Dodge, Inc.,* 41 Colo.App. 572, 589 P.2d 73 (1978); *Rutland Music Serv., Inc. v. Ford Motor Co.,* 138 Vt. 562, 422 A.2d 248 (1980); *Bicknell v. B & S Enter.,* 160 Ga.App. 307, 287 S.E.2d 310 (1981); *Courtesy Enter., Inc. v. Richards Laboratories,* 457 N.E.2d 572 (Ind.App.1983). This particular point is summarized in W.Va.Code, 46–2–607(2):

> "Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a nonconformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured but acceptance does not of itself impair any other remedy provided by this article for nonconformity." [16]

The seller makes two final arguments in a rather summary fashion. First, he refers to W.Va.Code, 46–2–714(2), which involves the measure of damages where there is a suit for breach of warranty. As we have previously discussed, this suit was not one based on a breach of warranty, but rather revocation of the contract and return of the purchase price. The second issue is that there was insufficient evidence to support the verdict. We find this to be without merit.

For the foregoing reasons, the judgment of the Circuit Court of Mineral County is affirmed.

Affirmed.

355 (1980); *Gasque v. Mooers Motor Car Co., Inc.,* 227 Va. 154, 313 S.E.2d 384 (1984). *See generally* 4 R. Anderson, *Uniform Commercial Code* § 2–608:40 (3d ed. 1983); 1 J. White & R. Summers, *supra,* at 420.

**16.** Further elaboration is made in note 2 of the official commentary to W.Va.Code, 46–2–607(2):

McGRAW, J., participated and concurred in this decision, but departed from the Court prior to the preparation of the opinion.

WORKMAN, J., did not participate in the consideration or decision of this case.

"Under subsection (2) acceptance of goods precludes their subsequent rejection. Any return of the goods thereafter must be by way of revocation of acceptance under the next section. Revocation is unavailable for a nonconformity known to the buyer at the time of acceptance, except where the buyer has accepted on the reasonable assumption that the non-conformity would be seasonably cured."