391 So.2d 1260 (1980)
Ted V. BAGWELL
v.
COLEMAN OLDSMOBILE, INC. d/b/a Coleman RV Center and General Motors Corporation.
No. 13432.
Court of Appeal of Louisiana, First Circuit.
October 6, 1980.
James Holliday, Jr., Baton Rouge, for Ted Bagwell.
Henry D. Salassi, Baton Rouge, for General Motors Corp.
Robert Kleinpeter, Baton Rouge, for Coleman Oldsmobile, Inc.
Richard Creed, Baton Rouge, for Coachmen Industries, Inc.
Terrence C. Mcrea, Baton Rouge, for Onan Corp.
Before EDWARDS, LEAR and WATKINS, JJ.
EDWARDS, Judge.
Coleman Oldsmobile, Inc., d/b/a Coleman RV Center, hereinafter Coleman, appeals a trial court judgment nullifying the sale to plaintiff, Ted V. Bagwell, of a twenty-three foot long motor home and casting Coleman for $20,207.10 in damages and $1,000.00 in attorney fees, subject to a credit of $952.50. We affirm.
With several observations, we adopt the trial court's excellent written reasons for judgment as our own.
"This is a suit by Ted V. Bagwell (Bagwell) for redhibition and rescission of the sale of a 1976 motor home. By amending petition, Bagwell's original petition was amended to show that Gulf Service & *1261 Supply, Inc., was the registered owner of the motor home and the actual plaintiff herein.
The evidence established that on May 16, 1977, Bagwell entered into a contract with Coleman Oldsmobile, Inc., d/b/a Coleman RV Center (Coleman), for the purchase of a 1976 motor home for a price of Thirty-Two Thousand Six Hundred Seven and 01/100 Dollars ($32,607.01), including taxes, registration and license fees. Bagwell was given credit of Ten Thousand Five Hundred Forty-Nine and 61/100 Dollars ($10,549.61) for the trade of a 1975 Lincoln Continental Mark IV, leaving a net cash price of Twenty-Two Thousand Fifty-Seven and 40/100 Dollars ($22,057.40) which was financed at GMAC.
Bagwell encountered many delays and difficulties initially in obtaining the vehicle even though Coleman knew it was intended to be used on an imminent vacation trip. Problems with the motor home manifested themselves on this initial trip, as well as during Bagwell's limited use of the vehicle for some 6,350 miles (the vehicle had 1,800 miles on it when plaintiff bought it, and according to Bagwell, it had 8,150 miles on it at the time of the trial); it has been parked since August of 1977 when it was tendered back to Coleman. Bagwell testified that although the Coleman personnel were always agreeable about fixing anything that was wrong, Coleman never, in fact, fixed anything. The difficulties included stained and dirty drapes and carpets which had been observed when the vehicle was bought, but which Coleman agreed at the time of purchase to either satisfactorily clean or replace. According to the testimony of Bagwell, confirmed in large part by the testimony of his wife, on the first trip the vehicle vibrated badly, the air conditioning would not cool the module down, the windshield washers would not work, the vehicle leaked badly, mainly in the left front, and around all the windows, the generator designed to cool the motor home when it was not traveling never functioned properly, the drawers were either too tight or too loose, the steering was loose, the bed was hard to make, the seat was hard to move, the butane tank gauge did not register properly, the load levelers worked in reverse, the CB installed by Coleman did not work properly, and the electrical system did not function properly; in fact, at one time it went out completely. In addition, the radiator mounts for the air conditioning for the vehicle proper broke, causing some radiator damage. Although there is some variance in the testimony, the Court finds that these defects, cumulatively at least, were such that they rendered the use of the vehicle so imperfect that Bagwell would not have bought same had he known thereof. For that reason, the Court will order the sale between Coleman and the plaintiff rescinded and fix the amount of plaintiff's recovery at $20,207.10, together with reasonable attorney's fees, which the Court fixes at $1,000.00. This amount is subject to a credit of $952.50, which the Court fixes as the reasonable value of plaintiff's use of the vehicle for some 6,350 miles.
The liability of the other parties to plaintiff and to each other is a different matter. The evidence shows that the vehicle in question was a 23-foot motor home. It was fabricated in large part by third party defendant Coachman (sic) Industries, Inc. (Coachman) at its plant in Indiana, for which Coleman was billed $7,421.30 by Coachman. Prior to that fabrication, General Motors Corporation (GMC) sold the chassis, engine, driver compartment, body shell, and power dash to Martin GMC Trucks, Inc. (Martin), of Lake Charles, Louisiana, an independent authorized GMC dealer. Martin in turn sold the transmode van to Coleman, but it was shipped directly to Coachman. This was apparently an accommodation to Coleman and to Coachman inasmuch as Coleman was not an authorized GMC dealer. The GMC components are collectively described in the industry as a `transmode.' The GMC invoice for the transmode reflects Martin GMC's request that *1262 the transmode be shipped directly from GMC to Coachman's Jimmy Division, located in Elkhart, Indiana, but it was invoiced to and paid for directly by Coleman. Upon receiving the unit at its factory, Coachman added some $7,400.00 worth of components to the transmode. The largest addition was Coachman's 23-foot transmode package, a package which included the interior fittings for the home, such as the refrigerator, seats, drapes, carpeting, tables, drawers and cabinets, paneling, etc. Coachman also cut holes in the side of the home and installed their window package for GMC transmodes. In addition, Coachman supplied a second air conditioner, a snack tray, an auxiliary battery, and a generator which powered all accessories. Many of the components utilized by Coachman in fabricating the unit were secured from third party manufacturers, which required extensive wiring, rewiring, plumbing and fitting to install. The accessory generator was purchased from third party defendant Onan Corporation, which was granted a severance from this trial. After Coachman assembled the unit, it invoiced the completed unit to Coleman, who was an authorized Coachman dealer. Coleman then sold the motor home to Bagwell.
Prior to the sale to Bagwell, the vehicle had been on Coleman's lot for some nine months, during which time some 1,800 miles were placed on it. The unit had incurred some water damage prior to the time it was sold to plaintiff and had been damaged on the lot to the extent that the replacement of two tires, leak caulking, a window and certain repair work and repainting to one side was required. The vehicle was sold as a new unit to Bagwell, although he was aware of the dirty and stained condition of the carpets and the drapes and knew that the vehicle had 1,800 miles on it. From the preponderance of the evidence, the Court is satisfied that the defects were in existence when the vehicle was sold to plaintiff. However, it is unable to conclude from this evidence the cause of or responsibility for the defects vis-a-vis Coleman, GMC or Coachman. It is significant, the Court believes, that the vehicle had been used to the extent previously referred to and to the extent that, according to Coleman's former general manager of the RV section, certain alignment and balancing to alleviate wear on the front tires was required, that the Onan generator never worked properly, that Coleman had no qualified mechanic for GMC maintenance, that no warranty claims were made against Coachman or GMC, that repairs had been made improperly, apparently by Coleman personnel, to the dining room table, and Coleman was aware of many of the defects at the time of sale. Under the facts developed in this case, there, of course, can be no presumption that the defects for which the Court has granted redhibition were defects which existed at the time of the delivery of the vehicle to Coleman. Coupled with the fact that Coleman made no serious effort to correct the defects or to call upon either Coachman or General Motors for assistance during the three months prior to the tendering of the vehicle to Coleman, the Court believes that it would not be proper to grant indemnity to Coleman against GMC or Coachman. Perrin v. Read Imports, Inc. (La.App. 4th Cir., 1978) 359 So.2d 738, Daigle v. Robinson Brothers, Inc. (La.App. 1st Cir., 1979) 368 So.2d 186. For the same reasons, the reciprocal third party petitions of GMC and Coachman should be dismissed.
Judgment will be signed accordingly." (footnotes omitted)
On appeal, Coleman specifies as errors the trial court's factual findings and dismissal of Coachmen Industries, Inc. and General Motors Corporation as third party defendants.
Despite Bagwell's knowledge that some defects existed at the time of sale and despite indications in the record, contrary to the trial court's findings, that the motor home had been driven by Coachmen to Coleman and had not been driven for 1,800 miles by Coleman, the record overwhelmingly *1263 supports a finding that latent defects were so numerous as to justify rescission of the sale.
The trial court found that Coleman "was aware of many of the defects at the time of sale." This finding, with which we agree, justified the trial court's award of attorney fees.[1]
A careful reading of the entire record convinces us that not only was Coleman technically in bad faith at the time of the sale (and consequently unable to seek indemnity from either Coachmen or General Motors on the basis of LSA-C.C. Art. 2531), but also that Coleman's acts after the sale showed continuing bad faith.
Coleman ignored plaintiff's repair request letters throughout the summer of 1977. Only one of three was even answered. Simple repairs were never made. The rug was never cleaned as promised. The drawers were never fixed. The air-conditioning vents were never cleared. And, contrary to Coleman's claims, the windshield wipers were not properly repaired. On one occasion, Coleman held the motor home for three weeks without making any repairs.
At trial, Coachmen testified that it stood ready to repair any defective materials or workmanship for which it was responsible. Yet, Coleman never sought Coachmen's assistance. In fact, Coachmen never heard of any problems until February 2, 1979, seventeen months after suit was filed. The trial court properly denied Coleman's claim for indemnity.
For the foregoing reasons, the trial court judgment is affirmed. All costs, both trial and appellate, are to be paid by Coleman Oldsmobile, Inc.
AFFIRMED.
NOTES
[1] LSA-C.C. Art. 2545 provides:

"The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages."