**CARBOLINE COMPANY,**
Plaintiff-Appellant,

v.

**B.C.D. COMPANY, INC.,**
Defendant-Respondent.

No. 49402.

Missouri Court of Appeals,
Eastern District,
Division One.

June 30, 1986.

Gary A. Growe, Blumenfeld, Sandweiss, Marx, Tureen, Ponfil & Kaskowitz, Clayton, for plaintiff-appellant.

Michael P. Riley, Paul T. Graham, Carson, Monaco, Coil, Riley & McMillin, P.C., Jefferson City, for defendant-respondent.

CARL R. GAERTNER, Presiding Judge.

Plaintiff sued defendant for breach of a commercial sales contract claiming defendant had refused to pay for paint plaintiff had delivered to defendant on open account. Defendant counterclaimed for damages, alleging some of the paint plaintiff had delivered was defective. A jury returned verdicts for plaintiff on the petition and on the counterclaim. The trial court, however, ordered a new trial on the counterclaim on the ground that the verdict for plaintiff was against the weight of the evidence. Plaintiff appeals from the order granting the new trial.[1] We affirm.

1. Plaintiff lost a favorable judgment on defendant's counterclaim when a new trial was ordered. Plaintiff is therefore an "aggrieved" party within the meaning of sec. 512.020, RSMo.

■ A trial court may, in its discretion, grant a new trial on the ground that the jury's verdict is against the weight of the evidence. Sec. 510.330, RSMo.1978. An order granting a new trial on this ground will not be reversed on appeal unless the record evidences an abuse of discretion. *Resco Construction Co. v. Dawson Cabinet Co.*, 656 S.W.2d 324, 326 (Mo.App. 1983). No abuse of discretion will be found if the record discloses substantial evidence to support a verdict for the party awarded the new trial. *Wilson v. Missouri-Kansas Texas Railroad Co.*, 595 S.W.2d 41, 46 (Mo.App.1980).

Under its contract with defendant plaintiff agreed to supply the type and quantity of paint defendant needed to perform a contract with the state to repaint a bridge that spans the Missouri River near Jefferson City. Painting the bridge entailed sandblasting the bridge's steel superstructure, applying a primer coat of zinc paint to the bare steel, and sealing that coat with a coat of vinyl paint.

On August 22, 1974, a state inspector informed defendant that the zinc paint defendant's laborers had been applying to the bridge for nearly two weeks did not meet contract specifications. What happened next is the subject of some dispute, but viewing the record in the light most favorable to defendant we find substantial evidence of the following: Because defendant could not proceed without zinc paint to prime the unprotected steel, it ceased operations until mid-September. During the latter half of September, defendant applied vinyl paint to the sections of the bridge it had primed with paint that had passed inspection. Defendant then spent October sandblasting sections of the bridge that had been primed with defective paint. In November defendant changed paint systems and had no further need for plaintiff's products.

■ Plaintiff does not dispute, and the record before us supports, defendant's

claim that some of the paint plaintiff supplied defendant was defective. Nevertheless, plaintiff asserts the order granting defendant a new trial was error because defendant failed to produce substantial evidence that it suffered damages as a consequence of plaintiff's breach.

Though the persuasive force of the testimony of defendant's witnesses on the issue of damages is somewhat diminished by the witnesses' digressions, we believe that a reasonable jury could conclude from their testimony that defendant suffered a loss.

What defendant's witnesses essentially presented was a cash flow analysis of the bridge project from August 20 to November 1, 1974. That is, they detailed the expenses defendant incurred on the project during that ten-week period, deducted from those expenses defendant's gross receipts from the state, and claimed the difference as damages. Plaintiff points out, correctly, that some of the expenses defendant detailed were neither incident to, nor a consequence of, plaintiff's breach. Other of these expenses, however, clearly were, and defendant may recover for them.

■ A buyer's damages for breach in regard to accepted goods include consequential as well as incidental damages. Secs. 400.2–714—400.2–715, RSMo.1978. Consequential damages, particularly lost profit, are often difficult to ascertain. But where, as here, a certain amount of profit is figured into a bid on a project, damages are somewhat easier to ascertain.

Defendant bid $449,000.00 to paint the bridge. When the state accepted the bid, $449,000.00 became the contract price. The profit component of the contract price is the difference between the contract price and the cost to defendant of performance in accordance with contract specifications. The record shows that in order to perform in accordance with contract specifications in this case, defendant had to re-sandblast, re-prime, and re-seal sections of the bridge

1978, and may appeal from the order. *See State ex rel. Mather v. Carnes*, 551 S.W.2d 272, 279

(Mo.App.1977).

it had primed with defective paint. The proper measure of damages for plaintiff's breach, therefore, is the difference between what defendant actually spent in labor and materials to complete the sections according to contract specifications and what defendant would have expended to paint those sections if the primer plaintiff supplied had been as warranted. Actual expenditures would include the cost of applying the defective paint, the cost of removing it, and the cost of repainting affected sections of the bridge with products that met contract specifications. *See Carboline Co. v. Oxmoor Center* (Ky.App.1985); 40 UCC Rep. 1728, 1734. Because defendant produced substantial evidence that it made such expenditures, the trial court did not abuse its discretion when it ordered a new trial on the counterclaim.

The order granting defendant a new trial is affirmed and the cause remanded.

SMITH and SNYDER, JJ., concur.