384 S.E.2d 374

The **CITY NATIONAL BANK OF CHARLESTON**

v.

**Leonard B. WELLS**

v.

**TOYOTA MOTOR SALES, et al., and Bud Young Toyota, Inc.**

**No. 18409.**

Supreme Court of Appeals of West Virginia.

Aug. 2, 1989.

---

Gregory E. Elliott, Hann & Elliott, Charleston, for Bud Young.

Otis O'Connor, Charleston, for City Nat. Bank.

C. Page Hamrick, III, Charleston, for Leonard Wells.

G.W. Lavendar, III, Charleston, for Mid Atlantic Toyota Distr. and Toyota Motor Sales.

MILLER, Justice:

This is an appeal by Bud Young Toyota, Inc. (defendant) from a final order of the Circuit Court of Kanawha County, dated June 29, 1987, which upheld a jury verdict in the amount of $10,333.00 in favor of Leonard B. Wells (plaintiff) in a breach of warranty action. The dispute between these parties arose out of the plaintiff's purchase of an allegedly defective automobile. The defendant asserts on appeal (1) that the trial court erred in not ruling that the plaintiff was not entitled to cancel the contract of sale, (2) that the trial court erred in allowing the jury to consider the alleged impairment of the plaintiff's credit rating as an element of consequential damages, (3) that the verdict was excessive, and (4) that the trial court erred in not ordering the vehicle manufacturer and distributor to indemnify the defendant. On

cross-assignment of error, the plaintiff asserts that the trial court erred in refusing to award him prejudgment interest on the verdict and attorney's fees. We find no error warranting reversal of the jury's verdict, but we remand for an award of attorney's fees.

The defendant was a retail automobile dealership located in Nitro, Kanawha County. On September 28, 1982, the plaintiff purchased a 1982 four-wheel-drive Toyota truck from the defendant for $8,520.00. Before purchasing the truck, the plaintiff, a stonemason, advised the salesman that he needed the vehicle for use in his business. The plaintiff gave a $1,000.00 downpayment, and the remainder of the transaction was financed by the defendant. The defendant and the plaintiff executed a document entitled "MOTOR VEHICLE CONTRACT, SECURITY AGREEMENT, NOTE AND DISCLOSURES," which listed the plaintiff's total obligation, with finance and other charges, as $11,242.56. On September 30, 1982, the defendant assigned this instrument to the City National Bank of Charleston (Bank).

The truck was protected by a limited twelve-month/12,500–mile warranty issued by the manufacturer, Toyota Motor Sales, U.S.A., Inc. (Toyota). The evidence at trial shows that shortly after the plaintiff took possession of the truck, the engine began to "miss," and the vehicle began to emit heavy, blue smoke when driven up hill. As required under the terms of the warranty, the plaintiff returned the truck to the defendant for repairs. The defendant's employees cleaned and tested the spark plugs and made a number of minor adjustments to the engine. The problems persisted, however, and the plaintiff testified that he returned to the defendant on at least two other occasions seeking to have them corrected. The plaintiff testified that on the last occasion, one of the defendant's employees had become rude and that he had left without further repairs.

In March, 1983, the plaintiff took the truck to another dealership, Tag Galyean Imports, for repairs. The Tag Galyean mechanics corrected the problem of the engine "missing" by replacing the spark plugs, but were unable to correct the smoke emissions. After another unsuccessful attempt to have the vehicle repaired, the plaintiff left the truck at Tag Galyean Imports on June 2, 1983, with instructions to "call me when it is fixed." The truck had been driven approximately 12,000 miles at that time.

The plaintiff testified that when he checked with the Tag Galyean service manager in the following weeks, he was told that parts would have to be ordered from Japan, that the wrong parts had been sent, and that repairs would require authorization from the manufacturer or distributor. The plaintiff testified that he telephoned the distributor, Mid–Atlantic Toyota Distributors, Inc. (Mid–Atlantic), several times without getting authorization and that it was only after officers of the Bank interceded on his behalf that the repairs were authorized.

At the end of June, 1983, upon being advised that the truck would not be repaired in the near future, the plaintiff purchased a new vehicle. The plaintiff advised the Bank that he intended to cease payments on the Toyota truck.

At the end of August, 1983, Tag Galyean Imports advised the plaintiff that the Toyota truck had been repaired. The work order indicated that the engine had been rebuilt and that the oil rings and guides in the cylinder heads had been replaced.

By letter dated September 3, 1983, the Bank advised the plaintiff that it had repossessed the vehicle and that it would be sold to satisfy the outstanding indebtedness of $7,418.09. By a subsequent letter dated September 27, 1983, the Bank advised the plaintiff that the vehicle had been sold for $6,200.00, leaving a deficiency of $1,329.57 for which he was responsible.

In November, 1983, the Bank instituted proceedings against the plaintiff in the Circuit Court of Kanawha County to recover the deficiency. The plaintiff responded by filing a third-party complaint against Toyota, Mid–Atlantic, and the defendant, seeking cancellation of the contract of sale and damages for breach of express and implied warranties under the Uniform Commercial

Code (UCC), W.Va.Code, 46–2–101, *et seq.*, and the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act (Magnuson–Moss Act), 15 U.S.C. § 2310 (1975). The plaintiff also filed a counterclaim against the Bank on similar grounds on the authority of W.Va.Code, 46A–2–103.[1] The defendant, Bud Young Toyota, Inc., subsequently filed a cross-claim against Toyota and Mid–Atlantic, alleging that any injury or damage suffered by the plaintiff was a result of a defect in the design or manufacture of the vehicle and seeking indemnification from them for any judgment entered in favor of the plaintiff.

Prior to trial, the Bank, Toyota, and Mid–Atlantic settled their claims with the plaintiff and were dismissed from his case with prejudice. On April 6, 1987, the case proceeded to trial on the plaintiff's claims against the defendant. The jury returned a verdict in favor of the plaintiff in the amount of $10,333.00. In a separate finding, the jury ruled against the defendant on its claim for indemnification from Toyota and Mid–Atlantic. The plaintiff's post-trial motions for prejudgment interest and attorney's fees were denied, and, by order dated June 29, 1987, the trial court overruled the defendant's motions for a new trial and for judgment notwithstanding the verdict.

## I.

■ The defendant's first contention on appeal is that the trial court erred in denying its motions for summary judgment, directed verdict, and judgment notwithstanding the verdict on the issue of cancellation. The defendant asserts that the plaintiff failed to make a timely revocation of his acceptance of the truck within the meaning of W.Va.Code, 46–2–608, and was, therefore, not entitled to cancel the contract of sale.[2]

■ In Syllabus Point 1 of *Kesner v. Lancaster*, 180 W.Va. 607, 378 S.E.2d 649 (1989), we set forth the showing a buyer must make to revoke his acceptance of goods under the UCC:

"W.Va.Code, 46–2–608, requires several conditions to be met before a buyer may revoke his acceptance of goods for nonconformity to a contract of sale: (1) the nonconformity must have substantially impaired the value of the goods to the buyer; (2) the goods must have been accepted on the reasonable assumption that the nonconformity would be cured, and it was not, or accepted without discovery of the nonconformity, either because of the difficulty of discovery or because of the seller's assurances; (3) the revocation must have occurred within a reasonable time after discovery of the defect and before any substantial change in the condition of the goods; and (4) the revocation is not effective until the buyer

1. W.Va.Code, 46A–2–103(1)(a), a provision of the West Virginia Consumer Credit and Protection Act, provides, in pertinent part: "A lender ... who, with respect to a particular transaction, makes a consumer loan for the purpose of enabling a borrower to buy goods or services ... is subject to all claims and defenses of the borrower against the seller arising from that specific sales of goods or services if such lender participates in or is connected with the sales transaction...."

2. Both the parties and the trial court characterized the claim as one for "rescission" of the contract. It is generally recognized that the UCC has rejected the use of that term in this context. *See* 4 R. Anderson, *Uniform Commercial Code* § 2–608:6 (3d ed. 1983); 1 J. White & R. Summers, *Uniform Commercial Code* 389–90, 416 (3d ed. 1988); 67A Am.Jur.2d *Sales* § 1194 (1985). As we recently stated in note 2, in part, of *Kesner v. Lancaster*, 180 W.Va. 607, 610, 378 S.E.2d 649, 652 (1989):

"According to note 1 of the Official Comment to W.Va.Code, 46–2–608, the phrase 'revocation of acceptance' is used by the UCC to avoid the confusion surrounding whether 'rescission' was an alternative remedy to a suit for damages. In *Shreve v. Casto Trailer Sales, Inc.*, 150 W.Va. 669, 149 S.E.2d 238 (1966), the Court, by way of dictum, recognized that under W.Va.Code, 46–2–608, both revocation and a suit for breach of contract are available."

An action for "rescission" of a contract for the sale of goods may, however, be treated as a suit for revocation of acceptance under W.Va.Code, 46–2–608. Anderson, *supra* § 2–608:3; 67A Am. Jur.2d *Sales* § 1194. When coupled with a request for cancellation of the contract under W.Va.Code, 46–2–711(1), revocation of acceptance approximates the same result as an action for rescission under prior law. *See* Anderson, *supra* § 2–608:6.

has notified the seller. A buyer making a revocation after acceptance on these terms has the same rights and duties under the Uniform Commercial Code as one who had rejected the goods originally." [3]

Here, it is conceded that the plaintiff did not notify the defendant of his intention to revoke his acceptance of the truck until the filing of the third-party complaint in December, 1983. The defendant asserts that this notice was not timely and deprived it of the right to cure the nonconformity within the meaning of W.Va.Code, 46–2–508.

### A.

With respect to the seller's right to cure the nonconformity, the defendant relies on *Reece v. Yeager Ford Sales, Inc.*, 155 W.Va. 453, 184 S.E.2d 722 (1971), wherein the Court stated, at Syllabus Point 2:

"Rescission of a contract of sale cannot be made by the buyer where the defects relied on for the rescission are minor defects and an offer is made by or on behalf of the seller to repair all of the defects complained of and the buyer refuses to accept such offer."

In note 3, in part, of *Kesner*, 180 W.Va. at 610, 378 S.E.2d at 652, however, we recog-- nized that in reaching this result, the Court in *Reece*

"discussed W.Va.Code, 46–2–508(1), which covers the seller's right to cure defects where the buyer has initially rejected the seller's 'tender or delivery . . . because nonconforming and the time for performance was not yet expired. . . .' This section is generally not applicable where the buyer accepts the goods and then wishes to revoke because of after-discovered defects. *See* 1 J. White & R. Summers, *Uniform Commercial Code* 425 (3d ed. 1988)."

Thus, the rights of the seller with respect to revocation of acceptance are controlled by the provisions of W.Va.Code, 46–2–608. Because this statute does not expressly give the seller the right to cure nonconformities in the goods, it is often held that where the buyer justifiably revokes his acceptance, he is not required to afford the seller the opportunity to cure or repair the defects.[4] *E.g., Bonebrake v. Cox*, 499 F.2d 951 (8th Cir.1974); *American Honda Motor Co., Inc. v. Boyd*, 475 So.2d 835 (Ala.1985); *Jensen v. Seigel Mobile Homes Group*, 105 Idaho 189, 668 P.2d 65 (1983); *Linscott v. Smith*, 3 Kan.App.2d 1, 587 P.2d 1271 (1978); *Gappelberg v. Landrum*, 666 S.W.2d 88 (Tex.1984). *See generally* 4 R. Anderson, *Uniform Commercial Code* § 2–608:15 (3d ed. 1983); 1 J.

---

**3.** W.Va.Code, 46–2–608, provides:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

"(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

"(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

**4.** An implied right to cure the defect may arise from W.Va.Code, 46–2–608(1)(a), which predi-

cates revocation of acceptance "on the reasonable assumption that [the] nonconformity would be cured and it has not been seasonably cured[.]" However, in note 5 of *Kesner v. Lancaster*, 180 W.Va. at 611, 378 S.E.2d at 653, we recognized that

"[t]his right to cure is not the absolute right to cure given to the seller under W. Va.Code, 46–2–508, when the buyer initially rejects the goods. Instead, W. Va. Code, 46–2–608(1)(a), affords the buyer an opportunity to explain why he accepted nonconforming goods, ordinarily an absolute bar to subsequent revocation under W.Va.Code, 46–2–607(2): 'Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a nonconformity cannot be revoked . . . unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured[.]' *See* 1 J. White & R. Summers, *supra*, at 419."

Circumstances giving rise to any implied right to cure under W.Va.Code, 46–2–608(1)(a), are not present in the case at bar.

White & R. Summers, *Uniform Commercial Code* 424 (3d ed. 1988); 67A Am.Jur.2d *Sales* § 1198 (1985). This is especially true where, as here, the seller has previously been given the opportunity to correct the defect and has either failed or refused to do so. *See Jorgensen v. Pressnall*, 274 Or. 285, 545 P.2d 1382 (1976); *Schroeder v. Fageol Motors, Inc.*, 12 Wash.App. 161, 528 P.2d 992 (1974), *rev'd on other grounds*, 86 Wash.2d 256, 544 P.2d 20 (1975). *See generally* Anderson, *supra* § 2–608:15.

■ Here, the rights of the parties were clearly controlled by the provisions of W.Va.Code, 46–2–608(1)(b). The defendant had previously been given several opportunities to correct the defect and had failed to do so. Consequently, the defendant cannot now complain that the revocation was ineffective because it was not given yet another opportunity to cure the nonconformity.

### B.

Nor can we conclude that the trial court was clearly wrong in not ruling that the plaintiff's revocation was untimely. Pursuant to W.Va.Code, 46–2–608(2), "[r]evocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it." The defendant argues that the plaintiff's failure to revoke his acceptance of the truck until fourteen months after he first discovered the defect must be deemed to be a waiver of his rights under W.Va.Code, 46–2–608.

■ It is generally recognized, however, that where delay in revoking acceptance is attributable to efforts or promises to correct the defect or nonconformity in the goods, revocation even after a relatively lengthy period of time may still be timely within the statute. *Tiger Motor Co. v. McMurtry*, 284 Ala. 283, 224 So.2d 638 (1969) (12 months); *Dopieralla v. Arkansas Louisiana Gas Co.*, 255 Ark. 150, 499 S.W.2d 610 (1973) (40 months); *Regents of Univ. of Colorado v. Pacific Pump & Supply, Inc.*, 35 Colo.App. 36, 528 P.2d 941 (1974) (over 22 months); *Conte v. Dwan Lincoln–Mercury, Inc.*, 172 Conn. 112, 374 A.2d 144 (1976) (14 months); *Fablok Mills, Inc. v. Cocker Mach. & Foundry Co.*, 125 N.J.Super. 251, 310 A.2d 491, *certification denied*, 64 N.J. 317, 315 A.2d 405 (1973) (24 months); *Ybarra v. Modern Trailer Sales, Inc.*, 94 N.M. 249, 609 P.2d 331 (1980) (48 months); *Cardwell v. International Housing, Inc.*, 282 Pa.Super. 498, 423 A.2d 355 (1980) (21 months); *Vista Chevrolet, Inc. v. Lewis*, 704 S.W.2d 363 (Tex.App.1985), *rev'd on other grounds*, 709 S.W.2d 176 (Tex.1986) (20 months). The seller's continuing obligation to repair may also justify a delay in revocation. 67A Am.Jur.2d *Sales* § 1213; Annot., 65 A.L.R.3d 354, 362–63 (1975). What is a reasonable time for revoking acceptance is a question of fact and depends on the circumstances of each case. W.Va.Code, 46–1–204(2). *See Frontier Mobile Home Sales, Inc. v. Trigleth*, 256 Ark. 101, 505 S.W.2d 516 (1974); *Irrigation Motor & Pump Co. v. Belcher*, 29 Colo.App. 343, 483 P.2d 980 (1971); *Solomon Refrigeration, Inc. v. Osburn*, 148 Ga.App. 772, 252 S.E.2d 686 (1979); *Fablok Mills, Inc. v. Cocker Mach. & Foundry Co.*, *supra*; *Warren v. Guttanit, Inc.*, 69 N.C.App. 103, 317 S.E.2d 5 (1984); *Cardwell v. International Housing, Inc.*, *supra*.

■ Here, it seems clear that the plaintiff discovered the defect in October, 1982, shortly after buying the truck. He returned it to the defendant, an authorized Toyota dealership, several times for repairs under the terms of the Toyota warranty. On each occasion, the defendant was unwilling or unable to correct the problems reported by the plaintiff. There is evidence that on the last occasion, the defendant's employees were rude to the plaintiff and, perhaps, guilty of refusing to honor Toyota's warranty. The plaintiff subsequently took the truck to another authorized Toyota dealer for repairs. It was only after several additional failed attempts to cure the defect that the plaintiff abandoned the vehicle and notified the defendant of his intent to revoke his acceptance.

The question of whether the plaintiff's revocation was timely under the circumstances was properly submitted to the jury. In view of the facts and circumstances of this case, we cannot say that their finding in favor of the plaintiff on this point was clearly wrong.

## II.

The defendant also contends that the trial court erred in allowing the jury to consider evidence that the plaintiff's credit rating was impaired following his default on the note. The defendant argues that this is not a proper element of consequential damages recoverable by the buyer under the UCC.

 As a general rule, a buyer who justifiably revokes his acceptance of nonconforming goods is entitled to recover any incidental and consequential damages flowing therefrom. W.Va.Code, 46–2–711(1); W.Va.Code, 46–2–713(1).[5] *See Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 638 P.2d 210 (1981); *International Paper Co. v. Farrar*, 102 N.M. 739, 700 P.2d 642 (1985); *Performance Motors, Inc. v. Allen*, 280 N.C. 385, 186 S.E.2d 161 (1972); *McGinnis v. Wentworth Chevrolet Co.*, 295 Or. 494, 668 P.2d 365 (1983); *Murray v. Holiday Rambler, Inc.*, 83 Wis.2d 406, 265 N.W.2d 513 (1978). *See generally* 67A Am.Jur.2d *Sales* § 1328. Consequential damages are described in W.Va.Code, 46–2–715(2):

> "Consequential damages resulting from the seller's breach include
>
> "(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>
> "(b) injury to person or property approximately resulting from any breach of warranty."[6]

 It is recognized that this provision is broad enough to encompass a variety of losses, including lost profits,[7] interest

---

5. We note that the jury here was instructed that the measure of damages for breach of warranty "is the difference at the time and place of acceptance between the value of the vehicle accepted and the value it would have had if it had been as warranted." In *Mountaineer Contractors, Inc. v. Mountain State Mack, Inc.*, 165 W.Va. 292, 268 S.E.2d 886 (1980), we recognized that this standard, taken from W.Va.Code, 46–2–714(2), is the usual measure of damages in a breach of warranty action.

In *Mountaineer Contractors*, however, the buyer had retained the goods after discovering the nonconformities. It is generally accepted that where the buyer revokes his acceptance of the goods and seeks cancellation of the contract, the proper measure of damages is set forth in W.Va.Code, 46–2–711:

"(1) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (section 2–612) [§ 46–2–612], the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid

"(a) 'cover' and have damages under the next section [§ 46–2–712] as to all the goods affected whether or not they have been identified to the contract; or

"(b) recover damages for nondelivery as provided in this article (section 2–713) [§ 46–2–713]."

See W.Va.Code, 46–2–608(3); *Givan v. Mack Truck, Inc.*, 569 S.W.2d 243 (Mo.App.1978); *Gawlick v. American Builders Supply, Inc.*, 86 N.M. 77, 519 P.2d 313 (1974); *Desilets Granite Co. v. Stone Equalizer Corp.*, 133 Vt. 372, 340 A.2d 65 (1975). *See generally* Anderson, *supra* §§ 2–711:3, 2–714:3, 2–715:5; White & Summers, *supra* at 501; 67A Am.Jur.2d *Sales* § 1164.

Here, the instruction as to the measure of damages for breach of warranty was given at the request of the plaintiff, and neither party complains of error in this appeal. Accordingly, any error therein must be deemed to have been waived. *Adams v. El-Bash*, 175 W.Va. 781, 338 S.E.2d 381 (1985).

6. Incidental damages are described in W.Va. Code, 46–2–715(1):

"Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach."

7. *See Barney Machinery Co. v. Continental M.D.M., Inc.*, 434 F.Supp. 596 (W.D.Pa.1977); *Uganski v. Little Giant Crane & Shovel, Inc.*, 35 Mich.App. 88, 192 N.W.2d 580 (1971); *Hardwick v. Dravo Equip. Co.*, 279 Or. 619, 569 P.2d 588

and finance charges,[8] and extra overhead, labor and expenses incurred as a result of the seller's breach.[9] "To recover consequential damages, the buyer must establish: (1) causation, (2) foreseeability, (3) reasonable certainty as to amount, and (4) that he is not barred by mitigation doctrines." White & Summers, *supra* at 309. The burden of proving consequential damages is on the buyer. *Kohlenberger, Inc. v. Tyson's Foods, Inc.*, 256 Ark. 584, 510 S.W.2d 555 (1974); *Stair v. Gaylord*, 232 Kan. 765, 659 P.2d 178 (1983); *Murray v. Holiday Rambler, Inc., supra. See generally* Anderson, *supra* § 2–715:14; 67A Am. Jur.2d *Sales* § 1313.

The plaintiff here sought consequential damages pursuant to W.Va.Code, 46–2–715(2)(a). The evidence at trial showed that in July, 1985, a St. Albans bank had refused to finance the plaintiff's purchase of an automobile for personal use. The notice from the bank listed "Delinquent credit obligations" and "Insufficient Equity" as reasons for the refusal, based on information received in a report from the Credit Bureau of Charleston, a consumer reporting agency. When the plaintiff inquired further, he learned that his default on the loan for the Toyota truck had been made a part of his credit history. The plaintiff testified that he filed a letter of rebuttal, explaining the circumstances of the default, with the Credit Bureau and was subsequently able to obtain financing from a bank which did not require a credit check.

In June, 1986, however, the plaintiff applied for a loan to purchase earth-moving equipment for use in his business. The plaintiff testified that he was refused the loan because of his damaged credit rating. The plaintiff testified that he needed the equipment immediately for a job he had contracted to do and was forced to pay other contractors with appropriate equipment $3,000.00 to perform the work until he was able to obtain financing one month later.

The defendant contends that any loss sustained by the plaintiff was attributable either to the Bank's action in reporting the default to the Credit Bureau or to the plaintiff's own conduct in defaulting on the obligation. Consequently, the defendant argues that any loss suffered was not the proximate result of any breach on its part. The defendant further asserts that the plaintiff failed to mitigate his losses by either continuing to make the payments or by returning the truck to the defendant for repairs.

In *ACME Pump Co., Inc. v. National Cash Register Co.*, 32 Conn.Supp. 69, 337 A.2d 672 (1974), the purchaser of a bookkeeping machine sued the seller for breach of warranty when the machine proved defective. The plaintiff had financed the transaction through a lease arrangement with a third party, Granite Equipment Leasing Corporation (Granite). When it became apparent that the machine was defective, the plaintiff ceased making payments. Granite repossessed the unit and obtained a deficiency judgment against the plaintiff. In its breach of warranty action against the seller, the plaintiff sought to recover the amount of the deficiency judgment as consequential damages.

In ruling that the plaintiff was entitled to recover on this claim, the court in *ACME*

---

(1977); *Schroeder v. Fageol Motors, Inc., supra; Star Furniture Co. v. Pulaski Furniture Co.,* 171 W.Va. 79, 297 S.E.2d 854 (1982).

**8.** *See Burrus v. Itek Corp.,* 46 Ill.App.3d 350, 4 Ill.Dec. 793, 360 N.E.2d 1168 (1977); *Lee v. Blanchard,* 264 So.2d 364 (La App.1972); *Jacobs v. Rosemount Dodge–Winnebago South,* 310 N.W.2d 71 (Minn.1981); *Vernon v. Potamkin Cadillac Corp.,* 118 A.D.2d 698, 499 N.Y.S.2d 975, *appeal dismissed,* 69 N.Y.2d 707, 512 N.Y.S.2d 1032, 504 N.E.2d 400 (1986); *Aubrey's R.V. Center, Inc. v. Tandy Corp.,* 46 Wash.App. 595, 731 P.2d 1124 (1987).

**9.** *See Kirby v. Chrysler Corp.,* 554 F.Supp. 743 (D.Md.1982); *Chatlos Systems, Inc. v. National Cash Register Corp.,* 479 F.Supp. 738 (D.N.J.1979), *rev'd on other grounds,* 635 F.2d 1081 (3d Cir.1980), *cert. denied,* 457 U.S. 1112, 102 S.Ct. 2918, 73 L.Ed.2d 1323, (1982); *Puritan Mfg., Inc. v. I. Klayman & Co.,* 379 F.Supp. 1306 (E.D.Pa.1974); *Carl Beasley Ford, Inc. v. Burroughs Corp.,* 361 F.Supp. 325 (E.D.Pa.1973), *aff'd,* 493 F.2d 1400 (3d Cir.1974); *District Concrete Co., Inc. v. Bernstein Concrete Corp.,* 418 A.2d 1030 (D.C.App.1980); *Carboline Co. v. B.C.D. Co., Inc.,* 712 S.W.2d 453 (Mo.App.1986).

*Pump*, 32 Conn.Supp. at 76, 337 A.2d at 677, stated:

"In this case, the defendant's breach of warranty was the proximate cause of the Granite lawsuit. The judgment obtained by Granite ... was in a reasonable amount. It could not have been avoided by any reasonable or prudent effort on the part of the plaintiff. Obviously, it would have been unfair to compel the plaintiff to continue payments on a machine which was wholly defective. The plaintiff's resulting default led to the repossession by Granite....

" 'If a breach of contract is the cause of litigation between the plaintiff and third parties that the defendant had reason to foresee when the contract was made, the plaintiff's reasonable expenditures in such litigation are included in estimating his damages.' Restatement, 1 Contracts § 334. Since the defendant helped to arrange the lease between the plaintiff and Granite, the defendant had reason to anticipate that if the machine were defective, the plaintiff might breach its lease with Granite and Granite thereafter might sue the plaintiff."

*See Lycos v. Gray Mobile Home Sales, Inc.*, 76 Mich.App. 165, 256 N.W.2d 63 (1977).

■ We conclude that this approach is correct.[10] Except insofar as we have already addressed the issue in Section I of this opinion, the defendant here does not contest that the plaintiff justifiably revoked his acceptance of the Toyota truck under W.Va.Code, 46–2–608. The plaintiff was, therefore, entitled to cancel the contract of sale. W.Va.Code, 46–2–711. Thus, the defendant's breach of warranty was the proximate cause of the plaintiff's default on the obligation held by the Bank. That, in turn, produced the bad credit which ultimately required the plaintiff to incur the expense of hiring additional men and equipment when he was turned down on another loan. As we have already not-

ed, such expenses are recognized as a loss for which consequential damages may be awarded. *See* note 9, *supra.*

In addition, there was evidence that the loss was foreseeable within the meaning of W.Va.Code, 46–2–715. The plaintiff advised the defendant when he purchased the truck that he intended to use it in his business. The defendant was intimately involved in the financing arrangement and, thus, had reason to know that if the vehicle were defective, the plaintiff might legitimately refuse to make any further payments. In such circumstances, it is not unreasonable to assume that the plaintiff might suffer an impaired credit rating and incur additional business expenses. The amount of those expenses was reduced to a reasonably certain sum.

■ Nor do we find any failure on the part of the plaintiff to mitigate damages which would warrant reversal of the judgment. The buyer's duty to mitigate damages does not require him to undertake undue or oppressive burdens. *See Kirby v. Chrysler Corp.*, 554 F.Supp. 743 (D.Md. 1982); *Lake Village Implement Co. v. Cox*, 252 Ark. 224, 478 S.W.2d 36 (1972); *Hall v. Miller*, 143 Vt. 135, 465 A.2d 222 (1983); *Barnard v. Compugraphic Corp.*, 35 Wash.App. 414, 667 P.2d 117 (1983). As we have already stated, the plaintiff here justifiably revoked his acceptance of the defective truck and had no obligation to afford the defendant yet another opportunity to repair it. Moreover, the plaintiff's testimony indicates that he was financially unable to pay for two vehicles at once. In these circumstances, we cannot say that the plaintiff's failure to allow the defendant an opportunity to cure or refusal to continue payments on the defective vehicle constituted an unreasonable failure to mitigate damages.

In sum, we conclude that the plaintiff's evidence of losses due to an impaired credit rating satisfies all the requirements of con-

---

**10.** There is authority elsewhere to the contrary. In *Chaney v. General Motors Acceptance Corp.*, 349 So.2d 519 (Miss.1977), the Supreme Court of Mississippi rejected the rationale of *ACME Pump* and concluded that any damage suffered by the defaulting plaintiff was proximately caused by his failure to make payments and not by any breach of warranty on the part of the seller.

sequential damages recoverable under the UCC. W.Va.Code, 46–1–106(1), provides that "[t]he remedies provided by this chapter shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed...." Accordingly, we conclude that the issue of whether the plaintiff could recover consequential damages for the alleged impairment of his credit rating was properly submitted to the jury, and we find no grounds for reversing the judgment of the circuit court.

### III.

The defendant next contends that the verdict was excessive. At trial, the plaintiff introduced evidence of the value of the truck and of his payments to the defendant and the Bank of approximately $4,800.00. In addition, the plaintiff introduced evidence of the $3,000.00 in expenses resulting from the impairment of his credit rating and of $2,000.00 in lost earnings.[11] The jury returned a verdict in favor of the plaintiff in the amount of $10,333.00.

In Syllabus Point 4 of *Muzelak v. King Chevrolet, Inc.*, 179 W.Va. 340, 368 S.E.2d 710 (1988), we stated: " 'Courts must not set aside jury verdicts as excessive unless they are monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous and manifestly show jury passion, impartiality, prejudice or corruption.' Syl. Pt. 6, *Roberts v. Stevens Clinic Hospital*, 176 W.Va. 492, 345 S.E.2d 791 (1986)." We find no evidence that the verdict in this case meets this test of excessiveness. Accordingly, we find no grounds for reversal.

### IV.

Finally, the defendant contends that the trial court erred in not setting aside that part of the jury's verdict finding in favor of Toyota and Mid–Atlantic on the defendant's claim for indemnification. At trial, the defendant offered an instruction on its indemnity theory and argued the question to the jury. Toyota and Mid–Atlantic made no appearance and offered no evidence or argument at trial.[12]

In *Sydenstricker v. Unipunch Products, Inc.*, 169 W.Va. 440, 445, 288 S.E.2d 511, 515 (1982), we recognized that "[t]here are two basic types of indemnity: express indemnity, based on a written agreement, and implied indemnity, arising out of the relationship between the parties." *See Valloric v. Dravo Corp.*, 178 W.Va. 14, 357 S.E.2d 207 (1987); *Hill v. Joseph T. Ryerson & Son, Inc.*, 165 W.Va. 22, 268 S.E.2d 296 (1980).[13] The defendant here asserts an additional, statutorily created right of indemnity[14] in reliance on W.Va.Code, 17A–6A–15, which provides:

11. The plaintiff testified that he was unable to work for the entire month of June, 1983, because the truck was at Tag Galyean Imports for repairs. He stated that the summer months were his busiest time of year and estimated his lost net income for that month at $2,000.00 based on his average annual income for the previous several years. The defendant asserts that the testimony of the plaintiff alone is insufficient to establish this element of damages. We note, however, that the plaintiff's testimony in this regard is uncontradicted and that the defendant offered no objection to the sufficiency of it at trial. Accordingly, the defendant cannot now complain. *See Schroeder v. Fageol Motors, Inc.*, 12 Wash.App. at 167, 528 P.2d at 997.

12. We question the propriety of allowing the plaintiff's counsel to represent the interests of Toyota and Mid–Atlantic on the indemnification issue at the trial of the claims against the defendant. On the first day of trial, counsel for the plaintiff advised the court that as part of the settlement, the plaintiff had agreed to indemnify Toyota and Mid–Atlantic for up to $5,000.00 from any judgment recovered against the defendant.

13. In *Hill*, we also explained "that the person claiming implied indemnity in order to recover had to be without fault in regard to the incident that created the plaintiff's injuries." *Sydenstricker*, 169 W.Va. at 446, 288 S.E.2d at 515. In note 5, in part, of *Valloric v. Dravo Corp.*, 178 W.Va. at 18, 357 S.E.2d at 211, we stated that "[t]he absence of negligence or fault on the party seeking implied indemnity is one of the chief distinctions between it and the principle of express indemnity."

14. At trial, the defendant also offered testimony that its dealer sales and service agreement with Toyota and Mid–Atlantic expressly provided for indemnification in the event of "product failure." It does not appear, however, that the agreement itself was introduced into evidence below, and it is not included in the record before this Court. As the defendant relies en-

"Notwithstanding the terms of any dealer agreement, a manufacturer or distributor shall indemnify and hold harmless its dealers against any judgment for damages, including court costs and attorney's fees, arising solely out of complaints, claims or actions which relate to the manufacturer [*sic*], assembly or design of a new motor vehicle, or other functions by the manufacturer or distributor *beyond the control of the dealer*, including, without limitation, the selection by the manufacturer or distributor of parts or components for the vehicle, or any damages to merchandise occurring in transit to the dealer if the carrier is designated by the manufacturer or distributor, if the new motor vehicle dealer gives timely notice to the manufacturer or distributor of the complaint, claim or action." (Emphasis added).

This provision is part of a comprehensive statute intended to regulate the relationship and conduct of business between motor vehicle dealers on the one hand, and automobile manufacturers and distributors on the other. W.Va.Code, 17A–6A–1, *et seq.*

A number of other jurisdictions have similar statutes granting an automobile dealer a right of indemnity against the manufacturer or distributor for judgments arising out of defective manufacture or design of motor vehicles.[15] None has apparently had occasion to apply its provision in a context such as this.

In Louisiana, however, the courts have discussed a similar statutorily created right of redhibition. Redhibition is an action under civil law and is defined as "the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." La.Civ.Code Ann. art. 2520 (West 1952). *See Black's Law Dictionary* 1149–50 (5th ed.1979). Redhibitory defects do not include "[a]pparent defects, that is, such as the buyer might have discovered by simple inspection ...," La.Civ.Code Ann. art. 2521, or "latent defects which the seller has declared to [the buyer] before or at the time of sale...." La.Civ.Code Ann. art. 2522.

La.Civ.Code Ann. art. 2531 (West Supp. 1989) provides that a seller who was unaware of the vices or defects in goods is bound to repair only apparent defects and goes on to provide:

"In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect."

Reading these statutes together, the Louisiana courts have concluded that a seller has no right of action against a manufacturer under article 2531 when the seller's own negligence "is a substantial factor in aggravating or maintaining the defect." *Guyon v. Camper Village, Inc.*, 428 So.2d 1014, 1017 (App.), *writ denied*, 431 So.2d 1 (La.1983). In *Guyon*, 428 So.2d at 1017, the court further stated:

"Indemnification has been denied on the basis of the dealer's tardiness in re-

---

tirely on the provisions of W.Va.Code, 17A–6A–15, as support for its arguments on appeal, we do not consider the alleged contractual indemnity provision. *See Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981); *Excavation Constr., Inc. v. Ritchie,* 159 W.Va. 888, 230 S.E.2d 822 (1976); *Quackenbush v. Quackenbush,* 159 W.Va. 351, 222 S.E.2d 20 (1976).

**15.** Conn.Gen.Stat.Ann. § 42–133u (West 1987); Mass.Gen. Laws Ann. ch. 93B, § 5B (West 1984); Wyo.Stat. § 31–16–114 (1989). *See* Ala. Code § 8–20–4 (1984); Del.Code Ann. tit. 6, § 4905 (Supp.1988); Idaho Code § 49–1623 (1988); Ill.Ann.Stat. ch. 121½, ¶ 754 (Smith-Hurd Supp.1989); Ind.Code Ann. § 9–10–3–2 (Burns 1987); Ky.Rev.Stat.Ann. §§ 190.046, 190.0491 (Michie/Bobbs–Merrill 1989); Minn. Stat.Ann. § 80E.05 (1986); N.Y. Veh. & Traf. Law § 463 (McKinney 1986); N.C.Gen.Stat. § 20.305.1 (1983); Pa.Stat.Ann. tit. 63, § 818.8 (Purdon Supp.1989); R.I.Gen. Laws § 31–5.1–9 (1982); Va.Code Ann. § 46.1–550.5:30 (Supp. 1988).

pairing the vehicle and notifying the owner of the progress of the repairs, even though the defects arise at the time of manufacture and were attributable to the manufacturer. *Lehn v. Clearview Dodge Sales, Inc.*, 400 So. 2d 317 (La. App. 4th Cir.1981), writ denied, 406 So. 2d 608 (La.1981). In addition, the dealer has been denied indemnity when, through his dereliction, a minor defect becomes redhibitory in nature. *Daigle v. Robinson Brothers, Inc.*, 368 So. 2d 186 (La. App. 1st Cir.1979). Further, a claim for indemnity has been defeated when the dealer has failed to correct easily remediable defects. *Perrin v. Read Imports, Inc.*, 359 So. 2d 738 (La.App. 4th Cir.1978)." [16]

*See LaFrance v. Abraham Lincoln Mercury, Inc.*, 462 So.2d 1291 (App.), *writ denied*, 467 So.2d 531, 467 So.2d 532 (La. 1985); *Griffin v. Coleman Oldsmobile, Inc.*, 424 So.2d 1116 (La.App.1982); *Dearing v. Coleman Oldsmobile, Inc.*, 423 So.2d 19 (La.App.1982); *Bagwell v. Coleman Oldsmobile, Inc.*, 391 So.2d 1260 (La. App.1980).

We believe these principles are equally applicable to the provisions of W.Va.Code, 17A–6A–15. The statute clearly contemplates indemnification of the seller by the manufacturer and/or distributor only for damages resulting from defects in the design or manufacture of the vehicle "beyond the control of the dealer. . . ." Where the defect or nonconformity can be easily repaired by the dealer, the opportunity to prevent injury or loss to the buyer as a result of such defect or nonconformity is clearly a matter within the control of the dealer. If the dealer fails or refuses to correct such defects, we do not believe it is the intention of the legislature to permit the dealer to shift responsibility for the consequences to the manufacturer or distributor by way of indemnity.[17]

We conclude, therefore, that W.Va.Code, 17A–6A–15, requires an automobile manufacturer or distributor to indemnify and hold harmless its dealers against any judgment for damages, including court costs and attorney's fees, resulting from defects in the design, assembly, or manufacture of a motor vehicle which are beyond the control of the dealer. Where, however, the dealer fails or refuses to correct easily remediable defects, it is not entitled to the benefit of this statutorily created indemnity right. Whether a dealer is entitled to indemnity in such circumstances is ultimately a question of fact for the jury. *Griffin v. Coleman Oldsmobile, Inc., supra. See Pearson Ford Co. v. Ford Motor Co.*, 273 Cal.App.2d 269, 78 Cal.Rptr. 279 (1969); *Dearing v. Coleman Oldsmobile, Inc., supra; Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 657 P.2d 517 (1983); *Dumond v. Houma Toyota, Inc.—A.M.C. Jeep, Inc.*, 470 So.2d 484 (La.App.1985); *Otis Elevator Co. v. Wood*, 436 S.W.2d 324 (Tex.1968).

Here, there was evidence indicating that the defect in the Toyota truck was not easily repairable. There was some testimony that the engine had to be taken apart to effect repairs, and it is clear that the plaintiff lost the use of it for over a month in the process. Considerable delay and expense in effecting repairs or obtaining parts required by the manufacturer would support a dealer's claim for indemnity. *See* W.Va.Code, 17A–6A–15. On the other hand, the evidence also clearly shows that once the truck was repaired, it ran well, and two subsequent owners had no complaints about the engine. This fact tends to weigh against indemnification under the statute. We conclude this issue was one of fact for the jury.

The instruction offered by the defendant on this issue advised the jury to grant indemnity unless it found that the

---

**16.** The rule in the Louisiana redhibition cases is not unlike the general rule of the common law applicable in implied indemnity cases, i.e., that the seller must be shown not to have participated in the wrong which resulted in the injury or damage to the buyer. *See Sydenstricker v.*

*Unipunch Products, Inc.*, 169 W.Va. at 446–47, 288 S.E.2d at 515–16, and cases cited therein.

**17.** The fact that the dealer may not be entitled to statutory indemnity against the manufacturer has no bearing on the rights of the plaintiff against the dealer or manufacturer.

defendant had *contributed* to the defect in the vehicle. " ' "An erroneous instruction is presumed to be prejudicial and warrants a new trial unless it appears that the complaining party was not prejudiced by such instruction." [Citations omitted].' Syllabus Point 6, *Ratlief v. Yokum,* [167 W.Va. 779], 280 S.E.2d 584 (1981)." Syllabus Point 3, *Cunningham v. Martin,* 170 W.Va. 411, 294 S.E.2d 264 (1982). Here, the indemnity instruction was more favorable to the defendant than an instruction containing a correct statement of the law. Because this instructional error inured to the benefit of the defendant, he cannot claim reversible error. *See Addair v. Huffman,* 156 W.Va. 592, 195 S.E.2d 739 (1973); *First Nat'l Bank of Peterstown v. Hansbarger,* 129 W.Va. 418, 40 S.E.2d 822 (1947).

## V.

The plaintiff makes a cross-assignment of error challenging the trial court's denial of his motions for attorney's fees and prejudgment interest.

### A.

With respect to attorney's fees and costs, we recently stated, in *Muzelak v. King Chevrolet, Inc.,* 179 W.Va. at 346–347, 368 S.E.2d at 716–17, that the Magnuson–Moss Act, 15 U.S.C. § 2310(d)(2), upon which the plaintiff relies,

"allows costs and expenses, including attorneys' fees on actual time expended when there is a breach of ... warranty under state law:

" 'If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggre-gate amount of cost and expenses (*including attorneys' fees based on actual time expended* ) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, *unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.* ['] [Emphasis Added]"

▮ It appears that courts have not interpreted the phrase "breach of warranty" in a limited manner. Instead, they have taken the view that a consumer who prevails on a claim for revocation of acceptance and cancellation of a contract of sale in an action for breach of the seller's warranties under the Uniform Commercial Code, W.Va.Code, 46–2–101, *et seq.,* may recover reasonable attorney's fees under the Magnuson–Moss Act, 15 U.S.C. § 2310(d)(2) (1975). *Tuppens, Inc. v. Bayliner Marine Corp.,* 541 So.2d 1281 (Fla. App.1989); *Black v. Don Schmid Motor, Inc., supra; Guerdon Industries, Inc. v. Gentry,* 531 So.2d 1202 (Miss.1988); *Troutman v. Pierce, Inc.,* 402 N.W.2d 920 (N.D.1987); *Costa v. Volkswagen of America,* 551 A.2d 1196 (Vt.1988). Accordingly, we conclude that the trial court erred in rejecting the plaintiff's claim for attorney's fees.

### B.

With respect to the claim for prejudgment interest, the plaintiff relies on cases interpreting W.Va.Code, 56–6–31 (1981).[18] This provision was amended after our decision in *Bond v. City of Huntington,* 166 W.Va. 581, 598, 276 S.E.2d 539, 548 (1981), where we extended the rule permitting pre-

---

18. W.Va.Code, 56–6–31 (1981), provides:
 "Except where it is otherwise provided by law, every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not: Provided, that if the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of such special or liquidated damages shall bear interest from the date the right to bring the same shall have accrued, as determined by the court. Special damages includes lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, as determined by the court. The rate of interest shall be ten dollars upon one hundred dollars per annum, and proportionately for a greater or lesser sum, or for a longer or shorter time, notwithstanding any other provisions of law."

judgment interest for pecuniary loss in personal injury actions on the ground that "the purpose of awarding interest as a part of the damages, where there is an ascertainable pecuniary loss, is to fully compensate the injured party for the loss of the use of funds that have been expended." *See Grove v. Myers,* 181 W.Va. 342, 382 S.E.2d 536 (1989); *Bell v. Inland Mut. Ins. Co.,* 175 W.Va. 165, 332 S.E.2d 127, *cert. denied,* 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985); *Kirk v. Pineville Mobile Homes, Inc.,* 172 W.Va. 693, 310 S.E.2d 210 (1983).

However, W.Va.Code, 56–6–31, does not specifically apply to contract actions. In *Thompson v. Stuckey,* 171 W.Va. 483, 300 S.E.2d 295 (1983), we stated that in contract claims, the right to prejudgment interest is dependent on the provisions of W.Va.Code, 56–6–27 (1923), which leaves the determination to the jury.[19] In Syllabus Point 4 of *Thompson,* we stated:

"In an action founded on contract, a claimant is entitled to have the jury instructed that interest may be allowed on the principal due, *W.Va.Code,* 56–6–27 [1923], but is not entitled to the mandatory award of interest contemplated by *W.Va.Code,* 56–6–31 [1981], since this statute does not apply where the rule

concerning interest is otherwise provided by law."

Thus, the plaintiff here is not entitled to an award of prejudgment interest after trial, although he could have demanded an instruction to that effect in order to submit the issue to the jury. His failure to do so must be deemed a waiver of that right. *See McAllister v. Weirton Hosp. Co.,* 173 W.Va. 75, 312 S.E.2d 738 (1983); *Berkeley Homes, Inc. v. Radosh,* 172 W.Va. 683, 310 S.E.2d 201 (1983).

### VI.

In conclusion, we find no error warranting reversal of the jury's verdict, but conclude that the trial court erred in refusing to grant the plaintiff attorney's fees. Accordingly, we remand the case to the Circuit Court of Kanawha County with directions to award the plaintiff reasonable attorney's fees under the Magnuson–Moss Act.

Remanded.

---

19. W.Va.Code, 56–6–27, provides, in full:

"The jury, in any action founded on contract, may allow interest on the principal due, or any part thereof, and in all cases they shall find the aggregate of principal and interest due at the time of the trial, after allowing all proper credits, payments and sets-off; and judgment shall be entered for such aggregate with interest from the date of the verdict."