528 P.2d 941 (1974)
The REGENTS OF the UNIVERSITY OF COLORADO, a body corporate, Plaintiff-Appellee,
v.
PACIFIC PUMP AND SUPPLY, INC., also known as Clarke-Pacific, Inc., each Colorado corporations, Defendant-Appellant.
No. 73-433.
Colorado Court of Appeals, Div. II.
November 19, 1974.
*942 Harlen C. Stientjes, Greeley, for plaintiff-appellee.
Donald L. Elmore, Englewood, for defendant-appellant.
Selected for Official Publication.
COYTE, Judge.
This is an action by the University of Colorado against Pacific Pump and Supply, (seller) for rescission of contract and for consequential damages resulting from a sale of a power plant to the University. From a judgment in favor of the University, seller appeals. We affirm.
In January 1967, the University issued a "Request for Quotation" seeking bids for an emergency electric power plant consisting of an engine and generator. Specifications for the plant were in part as follows:
"Furnish and install a standby emergency electric power plant rated 55 KW, 68.7 KVA, at .80 power factor, standby service and 50 KW, 62.5 KVA continuous service . . . . Operation at 5,000 feet altitude, 100 F ambient temperature and based upon 830 BTU per cubic foot natural gas fuel. . . . The performance of the entire power plant shall be certified . . . .
. . . . . .
[Engine] shall have 8 cylinders, a minimum displacement of 401 cubic inches and minimum rating of 120 horsepower at 1800 RPM."
Seller submitted a bid which was accepted by the University and the unit was installed. When the unit was put into use, it overheated and shut itself off whenever called upon to supply emergency power. Several attempts were made by seller to make the plant function properly. When these efforts failed, the University built a battery inverter unit to run the equipment which depended upon the seller's power plant in an emergency. Total cost for labor and materials for the inverter was estimated at $4,672. The battery unit was used until June 1972.
Outside repairmen conducted electrical efficiency tests on the power plant in August 1968, May 1969, February 1970, and *943 June 1970. In none of these tests did the unit produce the 50 to 55 KW specified. In June 1970, the University gave Pacific the choice of refunding the money paid and reclaiming the plant or making sure the plant's performance conformed to the specifications. When Pacific Pump did neither, the University commenced this action to rescind the purchase agreement and to recover damages.
The parties stipulated that there was a contract between plaintiff and defendant for a power plant and that the plant did not supply 55 KW. The case was tried to the court which found that (1) the power plant as a unit (generator and engine) did not comply with the clear and unambiguous specifications of the contract, (2) the power plant was nonconforming within the meaning of C.R.S.1963, XXX-X-XXX, and (3) the extent of nonconformity substantially reduced the plant's value to the University. The court then concluded that the University was entitled to reject the power plant and claim a full refund of the purchase price. In addition, using C.R.S.1963, XXX-X-XXX, the court awarded consequential damages of $4,804.
Seller contends that the court erred in finding that the buyer was entitled to reject the power plant because individual components exceeded specifications in the contract. By the applicable provisions of the Uniform Commercial Code, since the University attempted to put the power plant into use, paid Pacific the contract price, and allowed Pacific to attempt repairs on the plant, this situation is more aptly described as a revocation of acceptance rather than rejection of the goods. See Moeller Manufacturing, Inc. v. Mattis, Colo.App., 519 P.2d 1218. Revocation of acceptance may occur when the article specified in the contract is so nonconforming that its value to the buyer is substantially impaired. C.R.S.1963, XXX-X-XXX. Nonconformity is defined in Irrigation Motor & Pump Co. v. Belcher, 29 Colo.App. 343, 483 P.2d 980, as follows:
"Nonconformity cannot be viewed as a question of the quantity and quality of goods alone, but of the performance of the totality of the seller's contractual undertaking."
It was stipulated in the pre-trial order that the power plant did not produce 50-55 KW. The seller himself warranted the full unit for performance and did not take any exception to any of the specifications as written. The output of the power plant was 65% of that called for in the specifications and was insufficient to run the equipment. Accordingly, the evidence supports the finding of the trial court that the total plant was substantially valueless to the plaintiff and that it was entitled to revoke its acceptance of the plant.
For revocation to be effective, it must occur within a reasonable time. C.R.S.1963, XXX-X-XXX. The seller knew of the defects in the power plant shortly after delivery. It attempted to repair it during 1968 and 1969, and it was present at the test in June 1970 when the power plant put out a maximum of 40 KW. After that test, the University revoked its acceptance. The buyer was justified in withholding revocation of acceptance until it was apparent that the seller could not perform its obligations under the contract. See Irrigation Motor & Pump Co. v. Belcher, supra. The record supports the finding of the trial court that the University acted within a reasonable time in revoking its acceptance of the contract.
The defendant also contends that the damages were excessive. He did not raise this issue at trial nor in his motion for new trial. Accordingly, we will not consider it. Mohler v. Park County School Dist., 32 Colo.App. 388, 515 P.2d 112.
Judgment affirmed.
PIERCE and SMITH, JJ., concur.