**GRAHAM HYDRAULIC POWER, INC.,**
a Colorado corporation,
Plaintiff–Appellee,

v.

**STEWART & STEVENSON POWER,**
INC., a Texas corporation,
Defendant–Appellant.

No. 89CA1363.

Colorado Court of Appeals,
Div. II.

Aug. 9, 1990.

**836**

Polodori, Gerome & Jacobson, Dennis J. Jacobson, Lakewood, for plaintiff-appellee.

Lois T. Levinson, Denver, for defendant-appellant.

Opinion by Judge HUME.

Defendant, Stewart and Stevenson Power, Inc., appeals the judgment that awarded damages to plaintiff, Graham Hydraulic

Power, Inc., on its contract claims, and dismissed defendant's counterclaims for breach of express and implied warranties and for revocation of acceptance. We affirm.

Defendant designed, fabricated, and sold a hydraulic fan drive system for installation by Neoplan USA Corp. in newly manufactured Regional Transportation District of Denver (RTD) buses. Two of the major components of the hydraulic fan drive system were a hydraulic pump and a hydraulic motor.

Plaintiff was an exclusive area distributor of hydraulic equipment products manufactured by Hydreco (manufacturer). Defendant's engineer asked plaintiff for published data on the manufacturer's brand of hydraulic pumps and motors. Plaintiff's employees personally provided defendant with the manufacturer's published materials which, in addition to product specifications, contained warranty policies that expressly stated terms of the warranties provided on the described product and also contained disclaimers of all implied warranties and disclaimers of any liability for incidental or consequential damages.

Defendant initially decided to use the manufacturer's model number 1409 pump and a model 1510 motor (System I) in the fan drive system. After favorable testing, defendant placed an order in May 1987 with plaintiff for 105 System I pumps and motors.

In July 1987, defendant was notified by RTD that System I was failing to cool the buses' engines at high temperatures. Defendant, through its engineer, determined that the System I pumps and motors were not performing to manufacturer's specifications and notified plaintiff of that problem.

Plaintiff subsequently put defendant in touch with representatives of the manufacturer who recommended that defendant replace all System I pumps and motors with the manufacturer's model 1512 pump and model 1512 motor (System II). At manufacturer's request, plaintiff agreed to convert the existing System I motors to System II motors by changing the gears and replacing the seals in the System I motors.

Plaintiff delivered the System II pumps and motors to defendant who installed them in the buses. System II passed Neoplan's cooling tests and was installed in the RTD buses. However, once the buses were placed into operation, the fan drives began to experience mechanical failures because of leaky shaft seals on the converted System II motors.

The converted motors were initially returned under warranty to plaintiff who replaced the seals and returned them to defendant without cost. However, as the frequency of the System II failures increased, defendant and RTD began in-house replacement of the failed seals in the converted motors rather than returning the units to plaintiff for repair.

During the summer of 1988, the frequency of System II failures was so extensive as to require replacement of the systems on a fleet-wide basis pursuant to a fleet defect provision of a contract RTD had with Neoplan and apparently which Neoplan had with defendant. Consequently, defendant began a retrofit program under which all System II motors and pumps were removed from RTD buses, regardless of whether any individual System II component was defective or not. Defendant replaced System II entirely with another manufacturer's components.

Defendant subsequently refused to pay the balance owing under the contract with plaintiff, and plaintiff brought suit to recover the unpaid amount. Defendant counterclaimed for breach of express and implied warranties and for revocation of acceptance.

## I.

Defendant first contends that the trial court erred in finding there was no breach of express warranty. We disagree.

■ When there is an express warranty, the question whether that warranty was breached is ordinarily one for the trier of fact. *Stroh v. American Recreation & Mobile Home Corp.*, 35 Colo.App. 196, 530 P.2d 989 (1975).

Here, the manufacturer's warranty provided that:

"On all products ... if ... equipment or parts manufactured by us fail to function properly ... because of defects in materials or workmanship ... the company ... will at our option, repair or replace ... or give you proper credit for such equipment or parts ... if returned ... by purchaser."

The trial court found that, upon failure of the System I components, plaintiff, in concurrence with the manufacturer, agreed to replace the System I components and to credit defendant for the returned System I components not used in System II. In addition, the court found that plaintiff repaired the leaking seals in the System II motors and that there was no evidence that the seals continued to leak once the motors were repaired.

Based on the foregoing findings, the trial court concluded there was no breach of express warranty. Since the court's findings are supported by the record, they will not be disturbed here. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

## II.

Defendant next contends the trial court erred in finding that plaintiff had effectively disclaimed any implied warranty of merchantability. We disagree.

Under § 4-2-314, C.R.S., warranties of merchantability, if all other statutory prerequisites have been met, arise in every contract for sale, unless properly excluded. *Lease Finance, Inc. v. Burger*, 40 Colo. App. 107, 575 P.2d 857 (1977). *See* § 4-2-316, C.R.S.

Although a manufacturer has made a disclaimer of warranties that satisfies the pertinent Uniform Commercial Code provision, each subsequent seller must make his own independent disclaimer in order to be protected from warranty liability. 3 R. Anderson, *Uniform Commercial Code* § 2-3165:62 (1983).

Here, plaintiff provided defendant with the manufacturer's published materials which contained a conspicuous written disclaimer of the implied warranties of merchantability, fitness for a particular purpose, and a disclaimer of liability for indirect or consequential damages. In addition, plaintiff's invoice contained a statement of warranty which provided that:

"Graham, Inc., warrants products sold by us to be free from defects in material and workmanship ... except those products which are warranted by their respective manufacturers and to those products Graham, Inc., makes no additional warranty, expressed or implied. ..."

The trial court concluded that insofar as the purported disclaimer clause in plaintiff's invoice would materially alter the terms of the prior agreement between the parties, it was not a valid disclaimer of warranties. *See* § 4-2-207, C.R.S.

The trial court also found that the manufacturer's disclaimer met the requirements of § 4-2-316, and defendant does not challenge that finding.

In addition, the court found that defendant knew plaintiff was the manufacturer's exclusive area distributor and that defendant received the disclaimer directly from plaintiff, and not from the manufacturer. The trial court also found that the manufacturer's disclaimer became a part of the basis of the bargain between plaintiff and defendant and that, therefore, plaintiff was not required to republish and restate the manufacturer's disclaimer on its own form or letterhead in order effectively to disclaim warranty liability.

Defendant relies on *Barazzotto v. Intelligent Systems, Inc.*, 40 Ohio App.3d 117, 532 N.E.2d 148 (1987) and *Collella v. Beranger Volkswagen, Inc.*, 118 N.H. 365, 386 A.2d 1283 (1979) in support of its contention of error. However, we conclude that those cases are factually distinguishable from the case at issue.

In both *Barazzotto* and *Collella*, the seller attempted to avoid warranty liability by asserting warranty disclaimers provided directly from the manufacturer to the buyer. In neither case did the seller personally and independently provide buyer with a copy of

the manufacturer's warranty. In each case, the court found that the seller could not avoid liability for breach of warranty through sole reliance on warranty disclaimers provided directly from the manufacturer to the buyer.

Here, unlike the sellers in *Barazzotto,* and *Collella,* plaintiff personally and independently provided defendant with the manufacturer's statement and disclaimer of warranty and those statements and disclaimers became part of the basis of the bargain between the parties. *See* § 4-1-201(3), C.R.S. Moreover, unlike the seller in *Barazzotto,* plaintiff made no statement to defendant that the manufacturer's product would meet defendant's specific needs.

Consequently, we agree with the trial court that, under the circumstances here, plaintiff independently and effectively disclaimed any implied warranty of merchantability when it provided defendant with a copy of the manufacturer's disclaimer.

█ In addition, although the purported disclaimer in plaintiff's invoice could, standing alone, constitute a material alteration of the terms of the agreement between the parties, defendant's receipt of the manufacturer's statement and disclaimer of warranties prior to its receipt of plaintiff's invoice served to remove any potential surprise caused by the incorporation of the disclaimer terms. Thus, we conclude that plaintiff's own restatement of warranty disclaimers amounts to an independent disclaimer sufficient to protect plaintiff from warranty liability. *See Ray L. Atchison Construction Co. v. Sossaman,* 717 P.2d 988 (Colo.App.1985); § 4-2-104, § 4-2-207, and § 4-2-316, C.R.S.

█ Defendant further contends that even if plaintiff effectively disclaimed warranty liability for System I components, the disclaimer was not effective as to the System II motors modified by plaintiff. We reject that contention.

Here, plaintiff modified the System II motors using a conversion kit supplied by the manufacturer. In addition, conversion was done at the manufacturer's request in order to satisfy the express warranties applicable to the non-conforming System I components. Thus, under these circumstances, we conclude that plaintiff's disclaimer extended to the System II components.

## III.

Defendant next contends the trial court erred in denying its claim for revocation of acceptance of the System II motors. We disagree.

█ Under § 4-2-608(1), C.R.S., revocation of acceptance may occur when the article specified in the contract is so nonconforming that its value to the buyer is substantially impaired. However, for revocation to be effective, it must occur within a reasonable time after the buyer discovers or should have discovered the reason for it and before any substantial change in condition of the goods which is not caused by their own defects. Section 4-2-608(2), C.R.S.; *see Regents of University of Colorado v. Pacific Pump & Supply Co.,* 35 Colo.App. 36, 528 P.2d 941 (1974).

█ Determination of reasonableness of time for revocation is one of fact to be made on the unique circumstances of each case. *Stroh v. American Recreation & Mobile Home Corp., supra.*

█ In addition, under § 4-2-608(1)(a), C.R.S., a buyer is entitled to revoke an acceptance of goods that he has accepted on the reasonable assumption that a nonconformity will be cured by seller, and if, thereafter, the non-conformity is not seasonably cured. *Jackson v. Rocky Mountain Datsun, Inc.,* 693 P.2d 391 (Colo.App. 1984).

█ Here, the trial court rejected defendant's revocation of acceptance claim finding that defendant kept and continued to use the System II motors under conditions of hard usage, long after the alleged defects were discovered. The court further found that plaintiff was effectively curing the defect in the System II motors prior to defendant's revocation of acceptance. Inasmuch as the trial court's find-

ings are supported by the record, they will not be disturbed here. *Page v. Clark, supra.*

## IV.

Defendant next contends the trial court erred in finding that the interest terms contained in plaintiff's invoice became a part of the contract between the parties. We disagree.

Here, the trial court found that the interest provision contained in plaintiff's invoice was an additional term of acceptance that did not materially alter the contract as between merchants. Under the facts presented by the record, we perceive no error in that finding. *See Offen, Inc. v. Rocky Mountain Constructors, Inc.,* 765 P.2d 600 (Colo.App.1988).

## V.

Defendant finally contends the trial court erred in taking judicial notice of technical matters which are not common knowledge. We disagree.

A trial court may take judicial notice only of facts that are of such common knowledge that they cannot reasonably be disputed. *Prestige Homes, Inc. v. Legouffe,* 658 P.2d 850 (Colo.1983). *See also* CRE 201(b).

Here, the record indicates that although the court engaged in a technical discussion of the effect of viscosity factors on hydraulic seals, there is no indication that the court took judicial notice of such technical matters in rendering its final decision. Rather, the record indicates that the court was merely commenting on the lack of evidence presented by defendant to establish the cause of the defect.

The judgment is affirmed.

STERNBERG, C.J., and RULAND, J., concur.