Coven, J.
This is an action to recover for the defendant’s alleged breach of the implied warranty of merchantability and negligence in the repair of a truck engine. Summary judgment was entered for the defendant, and the plaintiff has appealed pursuant to Dist./Mun. Cts. R. A. D. A., Rule 8A.
Defendant Mack Trucks, Inc. (“Mack”) sold the 1989 Mack truck which is the subject of this lawsuit to J.E. Larkin, Inc. (“Larkin”) on August 31,1989. The sale was a commercial transaction between corporate entities and did not involve consumer goods. As part of the sale, Mack provided to Larkin the typewritten Mack Mid-Liner Standard Warranty. The following disclaimer provision appeared on the face of the warranty in capital letters:
THIS WARRANTY IS MADE EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND OF ANY OTHER OBLIGATION OR LIABILITY ON THE PART OF THE MANUFACTURER INCLUDING WITHOUT LIMITATION OF THE FOREGOING, CONSEQUENTIAL DAMAGES.
Mack’s standard warranty covered the truck engine for twenty-four months after delivery of the truck to the original purchaser, Larkin. The truck was delivered on August 31,1989; the warranty expired on August 31,1991.
Larkin sold the truck to plaintiff Theos & Sons, Inc. (‘Theos”) on December 17, 1992. Theos claims that it was never informed of the terms or even existence of any warranties relating to the truck or its component parts, including the engine, and that it was never given written copies of any warranties or disclaimers.
Theos further claims that on or about December 1, 1993, it began to hear a noise in the truck’s engine and brought the truck to Vigor Diesel Injection, Inc. (“Vigor”). It was determined that the engine block was damaged and required *15 repairs. After the work was performed, Theos picked up the truck and paid for the repair work. However, the truck was driven only a short distance when the engine noise was heard again, and the truck was brought back to Vigor. Vigor started the engine at its shop and ran it for two to three hours during which time the engine failed. Vigor informed Theos that it would have to obtain a new engine. Theos alleges that piston number 4 in the truck’s engine broke apart, damaging the engine. Mack had issued a service bulletin prior to December, 1993 advising that pistons such as those in the subject engine were prone to failure by seizure, and indicating that a new cylinder kit was available to help eliminate the problem. Vigor’s mechanics did not follow the bulletin instructions while working on Theos’ truck. Mack was not aware that Vigor had performed repair work on the truck until after the engine was damaged.
Vigor was an independent contractor for Mack pursuant to an Authorized Parts and Service Dealer Agreement (“Agreement”) by and between Vigor and Manchester Mack Sales, Inc. (“Manchester Mack”), a distributor for Mack. The service dealer Agreement between Vigor and Manchester Mack was approved by Mack, but Mack was not a party to the Agreement or its covenants. The Agreement provided that Vigor would furnish warranty service on Mack vehicles in accordance with Mack’s applicable standard warranty, but only after obtaining prior approval for such service from Manchester Mack. Vigor was also required to submit invoices for any Mack standard warranty services to Manchester Mack. The invoice for the work performed on Theos’ truck was sent to Theos.
Theos argues that it was not aware of any Mack warranty applicable to the truck prior to December 1, 1993, and that it never attempted to exercise any warranty rights against Mack before that date. There had been no course of dealing between Theos and Mack prior to the damage to the engine on December 1,1993.
Theos’ appeal presents two issues: (1) whether Mack’s disclaimer of warranties was effective against Theos and, if not, whether Mack breached an implied warranty of merchantability applicable to the truck’s engine, and (2) whether Mack is responsible for Vigor’s alleged negligence in the repair of the engine.
1. It is undisputed that a seller- of non-consumer goods may disclaim express and implied warranties, including the implied warranty of merchantability. G.L.c. 106, §2-316. To exclude the implied warranty of merchantability, “the language [of the disclaimer] must mention merchantability and in case of a writing must be conspicuous.” G.Lc. 106, §2-316(2). A term or clause is conspicuous
when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals is conspicuous. Language in the body of a form is “conspicuous” if it is in larger or other contrasting type or color.
G.L.c. 106, §1-210(10). Whether a provision is conspicuous is a question of law for the court to be determined upon consideration of such factors as the location of the clause, the size of the type, any special highlighting such as boldface, capitalization or underlining, the clarity of the clause and the sophistication of the contracting parties. Logan Equip. Corp. v. Simon Aerials, Inc., 736 F. Supp. 1188, 1197 (D. Mass. 1990); Gilbert & Bennett Mfg. Co. v. Westinghouse Elec. Corp., 445 F. Supp. 537, 547 (D. Mass. 1977).
There is no question that the provision in the Mack standard warranty quoted above was an effective disclaimer. The clause was conspicuous in that it was typed in capital letters which stood out from the remainder of the warranty paragraph and it appeared on the front of the warranty. See Logan Equip. Corp., supra at 1197. The disclaimer also specifically stated that the implied warranty of merchantability was being excluded. G.L.c. 106, §2-316(2) .
The dispositive issue is whether the disclaimer of the implied warranty of mer *16 chantability in a contract of sale between the manufacturer and the original purchaser also applies in a sale to a subpurchaser who was not aware of the disclaimer. We hold that “[w]hen the manufacturer sells the goods to a [party] who resells the goods to the ultimate purchaser, the latter cannot sue the manufacturer if the manufacturer had made a disclaimer of warranties that satisfies UCC §2-316.” 3 R. ANDERSON, ANDERSON ON THE UNIFORM COMMERCIAL CODE, §2-316:62 (3d ed. 1983). See also Jean F. Powers, Expanded Liability and the Intent Requirement in Third-Party Beneficiary Contracts, 1993 Utah L. Rev. 67, 130-132; AM. LAW OF WARRANTIES §7.56 (1991).
The effect of a disclaimer should not depend on the actions of the middleman adequately relaying the disclaimer to his buyer. Where the manufacturer has neither agreed directly to a duty, nor created expectations in the third party ultimate user, there is no basis for liability, and a basis cannot be found in the desire simply to make the deepest pocket available.
ANDERSON, supra at §2-316:62.
When a resale is made to a third party or subpurchaser without any disclaimer of warranties, the manufacturer who expressly excluded warranties should not be held liable to the subpurchaser when he would not have been liable to his own buyer for breach of warranty. Id. at §2-316:58.[1] As a secondary purchaser, Theos had “no greater rights than the party [Larkin] to whom the automobile was originally sold. To say otherwise would mean that a disclaimer or warranty modification loses its effectiveness upon resale of a good, with later purchasers receiving warranty rights denied to their seller.” LeCates v. Hertrich Pontiac Buick Co., 515 A.2d 163, 166 (Del. Super. 1986). See also General Motors Corp. v. Halco Instruments, Inc., 185 S.E.2d 619, 620 (Ga. App. 1971). In the instant case, the implied warranty Theos claims through its purchase from Larkin is an implied warranty that was excluded by Mack and which Larkin never had; even the express, twenty-four month standard warranty given by Mack to Larkin expired more than a year before Theos even purchased the truck, and more than two years before the engine problem arose. “Properly executed limitations of warranties or available remedies are equally applicable to any one that would be a beneficiary of a seller’s warranty.” Wenner Petroleum Corp. v. Mitsui & Co. (U.S.A.), Inc., supra at 357. Mack’s disclaimer of the implied warranty of merchantability should thus be as applicable to Theos as it was to Larkin in the original sale.
2. There is also no merit in Theos’ second argument that Mack was liable on general agency principles for Vigor’s alleged negligence in the repair of the truck engine. The record indicates that Theos failed to advance specific facts sufficient to indicate the existence of a genuine issue of fact as to agency.
An agency “results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control.” Kirkpatrick v. Boston Mut. Life Ins. Co., 393 Mass. 640, 645 (1985) (quoting RESTATEMENT (SECOND) OF AGENCY §1 (1958)). The three “essential characteristics” of an agency relationship are:
1) the power of the agent to alter the legal relationships between the *17 principal and third parties and the principal and himself; 2) the existence of a fiduciary relationship toward the principal with respect to matters within the scope of the agency; and 3) the right of the principal to control the agent’s conduct with respect to matters within the scope of the agency.
Sabel v. Mead Johnson & Co., 737 F. Supp. 135, 138 (D. Mass. 1990) (citing RESTATEMENT (SECOND) OF AGENCY §§12-14 (1958)). ‘The essence of the principal-agent relationship is the right of power or control by the alleged principal over the conduct of the alleged agent.” Commonwealth Alum. Corp. v. Baldwin Corp., 980 F. Supp. 598, 611 (D. Mass. 1997).
The existence of an agency relationship and the agent’s authority to bind his purported principal may be demonstrated in two ways. “Actual authority arises from a manifestation of consent by the principal that another may act as his agent.” Id. Alternatively, apparent authority results from conduct “by the principal which causes a third person reasonably to believe that a particular person has authority to enter into negotiations or to make representations as its agent.” Id. See also Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 16 (1997); Hudson v. Massachusetts Prop. Ins. Underwriting Assn., 386 Mass. 450, 457 (1982). If a third person then changes his position in reliance on this reasonable belief, the principal is estopped from denying that the agency is authorized. For either actual or apparent authority to be found, there must be some intervention by the principal; “authority to do an act can be created by written or spoken words or other conduct of the principal....” RESTATEMENT (SECOND) OF AGENCY §§26,27 (1958).
Theos relies primarily on the Service Dealer Agreement as the basis for its argument that Mack conferred actual authority upon Vigor to serve at its agent. Contrary to Theos’ contention, however, Mack was not a party to that Agreement between Manchester Mack and Vigor. Moreover, the Agreement expressly and unequivocally states that Vigor is an independent contractor and not an agent for either Mack or Manchester Mack. The Agreement is devoid of any indication that Mack would instruct or control Vigor in the manner in which it performed its general work or specific repairs. The Agreement authorizes Vigor to provide warranty service on Mack vehicles only with the prior approval for such service by Manchester Mack. As there is no evidence that Mack knew of the repairs made to Theos’ truck before the work was done, there is no evidence that Vigor acted under the control, direction or supervision of ¡Mack in providing the repair services.
Further, while Vigor was obligated to render prompt and efficient service in accordance with Mack policies and standards and to satisfy other warranty related service requirements,[2] said requirements obviously amounted to the general standards with which Vigor had to comply to remain an authorized Mack truck service dealer. The requirements were unrelated to Vigor’s day-to-day operations and the specific manner in which they were conducted, and did not constitute evidence of an actual agency relationship.
Theos also mistakenly relies on Vigor’s statements that it was a Mack service dealer to establish Vigor’s agency. It is, however, the principal’s statements or conduct which is the source of an agent’s actual or apparent authority. Shafnacker v. Raymond James & Assoc., 425 Mass. 724, 743 (1997); Rubel v. Hayden, Harding & Buchanan, Inc., 15 Mass. App. Ct. 252, 255 (1983); RESTATEMENT (SECOND) OF AGENCY §§26,27.
*18 Finally, Theos contends that Vigor had apparent authority to act as Mack’s agent because (1) Vigor was required to display Mack logos and service signs, which were provided by Mack, on its premises, (2) Vigor’s invoice for the work performed on Theos’ truck possessed a Mack logo and (3) Mack acknowledged Vigor as an authorized parts and service dealer and referred customers to it. A franchisee’s bare use of a manufacturer’s label or logo is not sufficient to clothe the franchisee with apparent authority so as to render the franchisor vicariously liable. See Gonzalez v. Walgreens Co., 878 F.2d 560, 562 (1st Cir. 1989); Mobil Oil Corp. v. Bransford, 648 So. 2d 119, 121 (Fla. 1995). Such displays of logos or trademark symbols do not alone raise an inference of agency, Malmberg v. American Honda Motor Co., 644 So. 2d 888, 891 (Ala. 1994); and it is “a matter of common knowledge that these trademark signs are displayed by independent dealers.” Sherman v. Texas Co., 340 Mass. 606, 608-609 (1960). The record indicates that Vigor also had on its premises and on its invoices the logos of Cummins, CAT and ADS (Association for Diesel Specialists). The fact that Mack acknowledged Vigor as a service dealer and gave its name to customers is equally unavailing as evidence of Vigor’s apparent authority.
The trial court’s entry of summary judgment for the defendant is affirmed. The plaintiffs appeal is dismissed.
So ordered.

 The manufacturer’s disclaimer of warranties does not run with the goods so as to protect any subsequent seller of them, and “each subsequent seller must make his own independent disclaimer in order to be protected from warranty liability.” Graham Hydraulic Power, Inc. v. Stewart & Stevenson Power, Inc., 797 P.2d 835, 838 (Colo. 1990). See also Collella v. Beranger Volkswagen, Inc., 386 A.2d 1283, 1285 (N.H. 1978); Wenner Petroleum Corp. v. Mitsuit & Co. (U.S.A.), Inc., 748 P.2d 356, 357 (Colo. App. 1987).

 Vigor was required, for example, to purchase, use and maintain specific tools designated for servicing Mack vehicles, to use only genuine Mack or Mack approved parts for warranty service, and to have one of every four mechanics it employed attend the Mack service training school in order to service Mack vehicles.